Melba SCHUSTER, formerly Melba D. Baker, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

Melba SCHUSTER, formerly Melba D. Baker, Respondent.

UNITED CALIFORNIA BANK, Petitioner,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent.

COMMISSIONER OF INTERNAL REVENUE, Petitioner,

v.

UNITED CALIFORNIA BANK, Respondent.

Nos. 16774, 16825.

United States Court of Appeals Ninth Circuit.

Nov. 26, 1962.

Chickering & Gregory, Walter C. Fox, Jr., Burleigh Pattee, and Bruce M. Casey, Jr., San Francisco, Cal., for petitioner Melba Schuster.

Charles K. Rice, Asst. Atty. Gen., Lee A. Jackson, Meyer Rothwacks, A. F. Prescott, Sharon L. King, and Helen A. Buckley, Attys., Dept. of Justice, Washington, D. C., for Comr. of Internal Revenue.

Orrick, Dahlquist, Herrington & Sutcliffe, Orville A. Rohlf, Christopher M. Jenks, and William D. McKee, San Francisco, Cal., for United California Bank.

Before STEPHENS, JERTBERG and KOELSCH, Circuit Judges.

KOELSCH, Circuit Judge.

These are actions combined in this court to review two decisions of the Tax Court sustaining the Commissioner's determination that the petitioners are liable as transferees for unpaid estate taxes, pursuant to sections 827(b) and 900 of the Internal Revenue Code of 1939. (26 U.S.C. §§ 827(b), 900 (1952 ed.)).[1] The

1. All references to Code sections are to the Internal Revenue Code of 1939.

Section 827(b) provides:

"If the tax herein imposed is not paid when due, then the spouse, transferee, trustee, surviving tenant, person in possession of the property by reason of the exercise, nonexercise, or release of a power of appointment, or beneficiary, who receives, or has on the date of the decedent's death, property included in the gross estate under section 811(b), (c),

Tax Court's opinions appear in 32 T.C. 998 (1959), 32 T.C. 1017 (1959).

Upon the death of William P. Baker in 1951, his will was duly admitted to probate in California, the state of his residence, and his widow, Melba Baker (now Schuster), was appointed executrix. On October 7, 1952, Schuster filed an estate tax return to which she attached a copy of a trust agreement, executed between the decedent and the petitioner Bank. This agreement, dated September 12, 1941, designated Baker's daughter, Patricia Baker Englert, as beneficiary, and provided that the trust was to terminate and the property to be distributed to her on June 28, 1955, when she reached 30 years of age. It also contained the provision, which Baker had not invoked, permitting him to revoke the trust during his lifetime. The executrix reported the trust for disclosure purposes only, as she did not deem the corpus to be part of the decedent's estate. The then Commissioner, T. Coleman Andrews, concurred with the executrix but determined certain deficiencies in estate tax, which she paid out of the estate.

Shortly before the trust terminated, the beneficiary's husband advised the Bank that all gift taxes applicable to the trust and all estate taxes had been paid. Thereupon, the Bank distributed all the trust property and closed its file.

Andrews was succeeded as Commissioner by Russell C. Harrington. He decided the trust corpus constituted an asset of the decedent's estate for tax purposes, and that a deficiency accordingly existed. But although the estate was not finally distributed, and had assets in excess of the claimed deficiency, proceedings against it for collection was barred by the three-year statute of limitations provided by section 874(a). (26 U.S.C. § 874(a) (1952 ed.)).

However, section 827(b) provides that if an estate tax is not paid when due, then the "spouse, transferee, trustee, surviving tenant * * * or beneficiary," among others, who receives or has on the date of decedent's death property "included in the gross estate" is "personally liable" for its payment. And section 900 provides that the Commissioner might proceed against a "transferee" to collect the tax in the same way he might proceed against the estate. The section also allows a proposed assessment against a "transferee * * * within one year after the expiration of the period of limitation for assessment against the executor," or four years after the filing of the return. Finally, the section defines "transferee" as "a person who, under section 827(b), is personally liable for any part of the tax."

Acting pursuant to these sections, the Commissioner, on September 6, 1956, mailed deficiency notices to the Bank, as trustee, to Schuster, as surviving tenant, and to Englert, as transferee. Each of

(d), (e), (f), or (g), to the extent of the value, at the time of the decedent's death, of such property, shall be personally liable for such tax." * * *

Section 900 provides:

"(a) Method of collection. The amounts of the following liabilities shall, except as hereinafter in this section provided, be assessed, collected, and paid in the same manner and subject to the same provisions and limitations as in the case of a deficiency in a tax imposed by this subchapter (including the provisions in case of delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds):

"(1) Transferees. The liability, at law or in equity, of a transferee of property of a decedent, in respect of the tax (including interest, additional amounts, and additions to the tax provided by law) imposed by this subchapter.

* * * * *

"(b) Period of limitation. The period of limitation for assessment of any such liability of a transferee or fiduciary shall be as follows:

"(1) Within one year after the expiration of the period of limitation for assessment against the executor.

* * * * *

"(e) Definition of 'transferee'. As used in this section, the term 'transferee' includes heir, legatee, devisee, and distributee, and includes a person who, under section 827(b), is personally liable for any part of the tax."

them thereupon petitioned the Tax Court to review the Commissioner's determinations.

The Tax Court held that Englert was not liable,[2] but it sustained the Commissioner's determinations of deficiency against Schuster and the Bank, and they have brought the matters here. The Commissioner has not sought a review of the adverse decision in the case against Englert, but he has filed cross-petitions assigning as error the Tax Court's failure to include interest on the deficiencies found due from Schuster and the Bank. The Bank concedes that the trust corpus was properly includable in the gross estate, as required by section 827(b), and Schuster makes the same concession regarding the property held by her in joint tenancy with decedent during his lifetime. They also concede that the Commissioner sent the deficiency notices within four years after the filing of the estate tax return, as required by section 900. But they raise several issues of law in an effort to secure reversals of the Tax Court's decision. Petitioners' contentions will be considered seriatim.

■ It is petitioners' position that their substantive liability for the estate tax deficiency depends on state law, and that they are not liable under the law of the appropriate state, California. Their basic premise is that there is no federal law which establishes their substantive liability. They assert that section 900, under which the Commissioner is permitted to assess and collect deficiencies from transferees, does not establish the transferee's liability, but is merely a procedural statute which enables the Commissioner to proceed against the transferee as he might against the estate. According to the Conference Committee which reported this statute,

"Proceedings against the transferee are ordinarily had in equity, though if the taxpayer is still in existence, an unsatisfied return of execution must be had against him and a creditor's bill brought to satisfy the judgment. * * * Without in any way changing the extent of such liability of the transferee under existing law, the amendment enforces such liability * * * in the same manner as liability for a tax deficiency is enforced; that is, notice by the Commissioner to the transferee and opportunity either to pay and sue for refund or else to proceed before the Board of Tax Appeals, with review by the courts."

(Conference Committee Report, H.R. Rep.No.356, 69th Cong., 1st Sess., 1939–1 Cum.Bull. (Part 2) 371). The petitioners point out that a provision similar to section 900 governs the Commissioner's right to enforce the liability of transferees for the transferor's deficiency in *income* taxes. (26 U.S.C. § 311 (1952 ed.) ). In Commissioner of Internal Revenue v. Stern, 357 U.S. 39, 78 S.Ct. 1047, 2 L.Ed.2d 1126 (1958), the Supreme Court held that this provision does not impose substantive liability on transferees, but merely refers this question to the law of the appropriate state. See also Phillips v. Commissioner, 283 U.S. 589, 51 S.Ct. 608, 75 L.Ed. 1289 (1931); 6 Mertens, Fed. Gift & Estate Taxation § 47.04 (1958 ed.); 1 Paul, Fed. Estate & Gift Taxation § 13.46 (1942). The petitioners argue that the rule of the Stern decision should be applied in determining a transferee's liability for a deficiency in estate taxes, and thus that their liability depends on the application of state law. In California, the general rule is that a transferee's liability for the debts of the transferor is secondary,

2. The Court held that the term "transferee", as used in Section 827(b), refers only to transferees of transfers made in contemplation of, or taking effect at, the decedent's death. The Court held that the term "beneficiary", as used in the section, refers only to beneficiaries of

life insurance proceeds includable in the decedent's gross estate. Since Mrs. Englert was not embraced within the definition of either term, the Court held that she was not liable for the tax. ([Englert v. Commissioner], 32 T.C. 1008 (1959)).

not primary. That is, his liability is conditioned on the creditor's remedies against the transferor, and may not be enforced if the transferor has been relieved from his obligation (Lord v. Morris, 18 Cal. 482 (1861) ), or if the transferor is able to pay his obligation (Sherman v. S.K.D. Oil Co., 185 Cal. 534, 197 P. 799 (1921) ). The Commissioner has conceded that the estate is relieved from liability because of the expiration of the limitations period, and that the estate is sufficiently solvent to pay the deficiency.

■ We disagree with the petitioners' major premise that there is no federal law which establishes their substantive liability. It is true, as the petitioners argue, that section 900 is merely a procedural statute which authorizes the enforcement of a liability which is created elsewhere. But it does not follow that this liability is created by the authority of state rather than federal law. To the contrary, section 827(b) makes transferees "personally liable" for an estate tax deficiency due from an estate. This statute has consistently been regarded as the source of such a transferee's substantive liability, and the courts have developed a uniform body of federal law defining the nature and effects of this liability. See Sharpe v. Commissioner, 107 F.2d 13 (3d Cir. 1939); cf. Mississippi Valley Trust Co. v. Commissioner, 147 F.2d 186, 187 (8th Cir. 1945); Baur v. Commissioner, 145 F.2d 338 (3d Cir. 1944); Fletcher Trust Co. v. Commissioner, 141 F.2d 36 (7th Cir.), cert. denied 323 U.S. 711, 65 S.Ct. 36, 89 L.Ed. 572 (1944); LaFortune v. Commissioner, 263 F.2d 186, 187 (10th Cir. 1958); Moore v. Commissioner, 146 F.2d 824 (2d Cir. 1945); Equitable Trust Co. v. Commissioner, 13 T.C. 731 (1949);[3] 6 Mertens, supra at § 43.15. The line of authority which arrives at a different result respecting the transferee's liability for *income* tax deficiencies is inapposite, for there is no statute

similar to section 827(b) which makes transferees personally liable for the transferor's deficiency in income taxes. As the Court noted in the Stern decision, this was the reason that it was compelled to resort to state law to determine the transferee's liability. (357 U.S. at 43 n. 3, 78 S.Ct. at 1049). Accord, Rowen v. Commissioner, 215 F.2d 641 (2d Cir. 1954). Thus, the source of a transferee's substantive liability for a deficiency depends on the nature of the deficiency itself. It is true that this concept results in a disparity in the federal law regarding a transferee's liability for income and estate tax deficiencies, but the disparity was established by the authority of Congress, and we are bound to honor and apply it faithfully.

■ We conclude that the transferee's liability for estate tax deficiencies, under federal law, is essentially a primary, not a secondary, obligation. Section 827(b) specifically imposes some limitations on the liability of such a transferee, for it requires that a deficiency be due from the estate, and that his liability therefor is limited to the value of the estate corpus which he received. But no other limitations were imposed, and there is nothing to suggest that others were intended. Therefore, it seems axiomatic that the transferee's liability for an estate tax deficiency is not conditioned on the Commissioner's remedies against the estate, except as the statute provides otherwise, and is in the nature of a direct and primary obligation independent of the obligation of the estate. As the court declared in the Mississippi Valley Trust case, in connection with a comparable statute relating to gift tax deficiencies,

"If the donor fails to pay the automatically imposed tax when due, in accordance with the statute, no matter what the reason for his failure, there is an immediate and direct liability on the donee for the legally-

---

3. With the exception of the Scharpe case, all cited cases involve liability arising from the gift tax owing by the transferor. The transferee's liability for a gift tax is essentially the same as his liability for an estate tax, and thus the cases are persuasive authority for the problems raised in this litigation.

owed tax, to the extent of the value of the gift." (147 F.2d 186 at 187–188).

Indeed, the petitioners' argument that their liability is conditioned on the estate's insolvency is difficult to reconcile with the purpose of section 826(b), which gives the transferee the right of reimbursement against the undistributed portions of the estate. (26 U.S.C. § 826 (b) (1952 ed.)). This right presupposes a solvent estate at the time the transferee seeks reimbursement, and this condition would presumably be the same as when the deficiency was originally assessed against him. See Equitable Trust Co. v. Commissioner, supra. We conclude that the petitioners are not absolved from liability because of the Commissioner's failure to take timely action against the estate, or the estate's solvency. See Scharpe v. Commissioner, supra; cf. Mississippi Valley Trust Co. v. Commissioner, supra; Baur v. Commissioner, supra; Fletcher Trust Co. v. Commissioner, supra; LaFortune v. Commissioner, supra; Moore v. Commissioner, supra; Equitable Trust Co. v. Commissioner, supra.[4]

The petitioners contend that their liability is limited to the "property of the decedent" which is in their possession, as that phrase is used in section 900. Both petitioners contend that the property which gives rise to their liability did not belong to the decedent at his death. The Bank points out that the decedent transferred the trust corpus to the Bank prior to his death. Schuster asserts that in California, the interest of the surviving tenant in joint tenancy property is derived from the original grant, not from the deceased tenant.

We see little merit to the petitioners' argument. It proceeds from the premise that section 900 defines the nature of their liability under federal law and, as we have previously indicated, this premise is clearly wrong. The petitioners' liability is based on section 827(b), which was amended after the enactment of section 900 to make transferees liable for property "included in the gross estate" of the decedent. The petitioners have conceded that their property was includable in the decedent's gross estate. Significantly, the amendment specifically included "surviving tenants" and "trustees" within the group upon whom liability is imposed. Congress obviously meant to establish a uniform system of liability for such persons, rather than vary their liability in accordance with the anomalies of state law. Accordingly, we conclude that the petitioners' tax liability is not conditioned on the decedent's proprietary interest in the property under state law.

Schuster urges that she is not liable for the estate tax because the joint tenancy property is deductible as an interest passing to the decedent's surviving spouse, and therefore not includable in the net estate. (See 26 U.S.C. § 812(e) (1952 ed.)). But as we have already indicated, section 827(b) makes the transferee taxable on any property which is included in the decedent's "gross estate." There is no indication that Congress intended to limit her liability to property which is part of the decedent's net estate. Schuster argues that because of the deductibility of the property, it should not be considered as part of the *substantive* gross estate. Aside from the fact that this construction ignores the plain language of the statute, it over-

4. The Bank has strenuously urged its liability is conditioned on a timely notice of deficiency to the executor, since section 871(a) (1) provides that "no assessment of a deficiency in respect of the tax imposed by this subchapter" shall be made until "notice has been mailed to the executor." (26 U.S.C. 871(a) (1) (1952 ed.)). But section 900 provides for assessment and collection of the tax against the transferee in the same manner as against the executor, and thus contemplates that deficiency notices shall be sent to transferees, rather than the executor, in suits against the former. (See Commissioner of Internal Revenue v. Kuckenberg, (9th Cir.) 309 F.2d 202; Conference Committee Report [H.R.Rep. No. 356, 69th Cong., 1st Sess., 1939–1 Cum.Bull. (Part 2) 372].

looks the fact that Congress specifically included the "spouse" as among the transferees who were subject to liability; it is true that the enactment of this section preceded the enactment of the marital deduction statue in 1948, but the section was re-enacted in substantially identical form as part of the Internal Revenue Code of 1954. It appears that Congress chose to prefer the Commissioner over the surviving spouse when the estate tax was unpaid, a value judgment which we are not at liberty to question. We conclude that the deductibility of the property from the estate does not protect the surviving spouse from the Commissioner's claim.

The petitioners contend that the Commissioner is estopped from asserting liability because of his earlier determination that they were not liable for the tax deficiency.

 We recognize the force of the proposition that estoppel should be applied against the Government with utmost caution and restraint, for it is not a happy occasion when the Government's hands, performing duties in behalf of the public, are tied by the acts and conduct of particular officials in their relations with particular individuals. (See Couzens v. Commissioner, 11 B.T.A. 1040, 1050 (1928)). Estoppel has been applied against the Commissioner in limited situations, but they have usually arisen where the Commissioner's act involved matters of a purely administrative nature. (See H.S.D. Co. v. Kavanagh, 191 F.2d 831 (6th Cir. 1951); Woodworth v. Kales, 26 F.2d 178 (6th Cir. 1928)). Indeed the tendency against Government

estoppel is particularly strong where the official's conduct involves questions of essentially legislative significance, as where he conveys a false impression of the laws of the country. Obviously, Congress's legislative authority should not be readily subordinated to the action of a wayward or unknowledgeable administrative official. Accordingly, the general proposition has been that the estoppel doctrine is inapplicable to prevent the Commissioner from correcting a mistake of law. See Automobile Club v. Commissioner, 353 U.S. 180, 77 S.Ct. 707, 1 L.Ed.2d 746 (1957);[5] Keystone Auto Club v. Commissioner, 181 F.2d 402 (3d Cir. 1950); Berger, Estoppel Against the Government, 21 U.Chi.L.Rev. 680 (1954); Atlas, Doctrine of Estoppel in Tax Cases, 3 Tax L.Rev. 71 (1947).

 But we regard this proposition as one of general application, not as embracing the concept that the Commissioner might always correct a legal mistake regardless of the injustice which will result. It is conceivable that a person might sustain such a profound and unconscionable injury in reliance on the Commissioner's action as to require, in accordance with any sense of justice and fair play, that the Commissioner not be allowed to inflict the injury. It is to be emphasized that such situations must necessarily be rare, for the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context. But as long as the concept of estoppel retains any validity, it is conceivable that such situations might arise.

5. In the Automobile Club case, the Commissioner had erroneously informed the taxpayer that it qualified as a "club" within the meaning of the statute exempting such organizations from income tax liability. Upon discovering his mistake, the Commissioner sought to impose liability not only prospectively, but also retroactively. Because of the Commissioner's original determination, the taxpayer had not filed returns for the years in question, and this operated to suspend the running of the statute of limitations.

The taxpayer argued that the Commissioner was estopped from (a) imposing liability retroactively, and (b) asserting noncompliance with the statute of limitations. The Court rejected both contentions, on grounds that the estoppel doctrine does not bar the Commissioner from correcting a mistake of law. The Court additionally found that the Commissioner's right to impose retroactive liability was specifically grounded on statutory authority.

We are unaware of any particular detriment sustained by Schuster in reliance on the Commissioner's mistake, for she did not materially change her position in reliance on his earlier determination. But the Bank has been greatly prejudiced because of the Commissioner's mistake. After it was informed that the trust corpus was not includable in the decedent's gross estate, it distributed the corpus to the beneficiary, and thus no longer retains the property which was the subject of the deficiency. Therefore, any liability of the Bank would have to come out of its own pocket, not the corpus of the trust. This would be grossly unfair to the Bank, especially because it never enjoyed the use of the corpus but merely acted in the capacity of a trustee. It is difficult to see what additional action the Bank might have taken to protect itself from liability, faced with the beneficiary's demand for the corpus and the Commissioner's determination that it was not taxable. It is our conclusion that the Bank's equitable interest is so compelling, and the loss which it would sustain so unwarrantable, as to justify the application of the estoppel doctrine against the Commissioner.

The Commissioner takes the position that an estoppel cannot arise because he did not commit any act on which the Bank could have relied. But the Tax Court found that the Commissioner "audited the Federal estate tax return * * * and determined that the trust was not taxable." This involved a sufficiently affirmative act on the Commissioner's part. The determination was conveyed to the trust beneficiary, whose husband, a lawyer, relayed the information to the Bank. The Commissioner points out that the information reached the Bank indirectly, rather than directly, from the Commissioner. But he surely anticipated that the results of the audit would be communicated to the Bank. The Tax Court appropriately found that the Bank's reliance on the information was "reasonable." Therefore, we conclude that the Commissioner, although not precluded from asserting Schuster's liability, is estopped from asserting the liability of the Bank.

The petitioners have contended that sections 900 and 827 deprive the petitioners of property without due process of law, and therefore are violative of the standards contained in the Fifth Amendment. The violation occurs, it is argued, if the statutes are interpreted to make transferees liable for the taxes of the estate, to extend the statute of limitations for proceeding against transferees, to subject the transferee to liability when the estate is solvent, and to impose liability on a transferee who has property subject to the marital deduction.

As the Supreme Court declared in Helvering v. City Bank Farmers Trust Co., 296 U.S. 85, 90, 56 S.Ct. 70, 73, 80 L.Ed. 62 (1930):

> "The test of the validity in respect of due process of law is whether the means adopted are appropriate to the end. * * * [I]f the means are unnecessary or inappropriate to the proposed end, are unreasonably harsh or oppressive, when viewed in the light of the expected benefit, or arbitrarily ignore recognized rights to enjoy or to convey individual property, the guarantee of due process is infringed."

We do not believe the provisions for transferee liability are inappropriate or unreasonably harsh. The concept of due process does not prevent the imposition of primary liability, up to the value of the estate property in his possession, on a transferee for the tax deficiency due from the estate. Detroit Bank v. United States, 317 U.S. 329, 63 S.Ct. 297, 87 L.Ed. 304 (1943). Nor is it an infringement on constitutional guarantees to provide for more extended periods of limitation in suits against transferees than against the estate; it is easily conceivable that the Commissioner might need the additional time in order to determine the identity and whereabouts of the holders of the estate corpus. There is nothing beyond the power of Congress in allowing the Commissioner to proceed against the transferee when the estate is

solvent. The insolvency prerequisite is one of equity, not of constitutionality; even less is there a constitutional problem where, as here, the Commissioner is unable to proceed against the estate because of the expiration of the limitations period. Finally, the constitutional processes are not violated by the Commissioner's right to proceed against property which is subject to the marital deduction. Although Congress has preferred the surviving spouse over the Commissioner in determining the tax due from the estate, it is not unreasonable to reverse the preferences when the Commissioner is unable to collect the tax from the estate. As Congress may grant deductions in its grace, it may withhold them without grace. Therefore, we reject the petitioner's claims that sections 900 and 827 are violative of the Fifth Amendment.

The final question involves the Commissioner's cross-petition, asserting that the Tax Court erred in failing to provide for interest on the deficiencies.[6] However, interest on deficiencies may not be assessed, nor an action brought for their collection, until the deficiencies are assessed. (26 U.S.C. § 292(a) (1952 ed.)). The deficiencies may not be assessed, if a petition is filed with the Tax Court for a redetermination, until the taxpayer's liability for the tax has been finally established. (26 U.S.C. § 272(a) (1) (1952 ed.)). Therefore, matters involving interest must await the outcome of the proceeding for redetermination. It is for this reason that the Tax Court, in determining a taxpayer's liability for the deficiency, does not have jurisdiction to determine his liability for interest. Commissioner of Internal Revenue v. Kilpatrick's Estate, 140 F.2d 887 (6th Cir. 1944); United States v. Globe Indemnity Co., 94 F.2d 576 (2d Cir. 1938); Chapman v. Commissioner, 14 T.C. 943 (1950), aff'd per curiam 191 F.2d 816 (9th Cir. 1951); Fuller v. Commissioner, 20 T.C. 308

(1953), aff'd on other grounds 213 F.2d 102 (10th Cir. 1954); 9 Mertens, Fed. Inc. Taxation, §§ 55.02–55.03 (1958 ed.). Thus, it was not error for the Tax Court to fail to provide for assessment of interest.

The decision of the Tax Court is affirmed as to Melba Schuster, and reversed as to the United California Bank.

6. The Tax Courts did not discuss the issue of interest. The Commissioner claims this was an oversight, caused by the Commissioner's failure to include interest in its computation under Rule 50.