JACOB L. VAN HORN AND VERNIS B. VAN HORN, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Van Horn v. Commissioner
Docket No. 12739-79.
United States Tax Court
T.C. Memo 1981-559; 1981 Tax Ct. Memo LEXIS 182; 42 T.C.M. (CCH) 1261; T.C.M. (RIA) 81559; September 29, 1981. John W. Riches, II, for the petitioners. Thomas E. Brever, for the respondent. GOFFE
MEMORANDUM FINDINGS OF FACT AND OPINION GOFFE, Judge: The Commissioner determined a deficiency of $ 3,233 in the petitioners' Federal income tax for their taxable year 1976. The issues for our determination are: (1) whether it is inequitable to hold petitioners liable for a minimum tax arising from the sale of their farm at long-term *185 capital gain rates; and (2) whether the minimum tax should be applied to petitioners in view of the Congressional policy underlying these provisions. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts, together with the exhibits attached thereto, are incorporated herein by this reference. The petitioners timely filed their joint Federal income tax return for the taxable year 1976 with the Internal Revenue Service Center, Ogden, Utah. They resided in Alberta, Minnesota, when they filed their petition herein. During 1975, petitioners entered into negotiations with the United States Department of the Interior, Fish and Wildlife Service (hereinafter referred to as the Service) to sell all or part of their farm, located in Stevens County, Minnesota. The farm had not been condemned and petitioners were not otherwise under any compulsion to sell their farm to anybody. During the negotiations, petitioners requested that the Service pay the purchase price in annual installments over a period of years so that petitioners could defer recognition of the gain realized upon the sale of the farm to such later years pursuant to section 453, Internal Revenue Code *186 of 1954. [1]
During 1976, however, it was the policy of the Service to purchase land only by lump sum payment of the sales proceeds to the vendor. In fact, by regulation, the Service was not permitted to purchase realty pursuant to an installment payment procedure. Accordingly, the Service did not and could not agree to the petitioners' request. Petitioners voluntarily decided to sell their land to the Service anyway. On March 24, 1976, they entered into an agreement to sell a quarter section of land to the Service. Under the agreement, petitioners covenanted to convey to the Service clear title to the property and the United States covenanted that, after the warranty deed was delivered to it and properly recorded, it would pay to the petitioners the purchase price in the form of a United States Treasury check. In April 1976, the land sale was closed. Petitioners received from the United States a lump-sum payment for the land of $ 69,600 in the form of a Treasury check. Petitioners' farm operations were only marginally profitable. The following table shows petitioners' net income *187 from the farm for the indicated years: Taxable Year
Net Income
1970
$ 1,252 1971
(184)
1972
1,180 1973
2,678 1974
1,908 The land comprising petitioners' farm was not of the highest quality for farming purposes. Due to its terrain, however, the land was ideally suited to the needs of the Service. Operation of the land as a game preserve was a much higher and better use than as a farm. Petitioner Jacob Van Horn was of the opinion that at the time of sale, it would not have been possible to sell the farm to another party for anywhere near the price paid by the United States. On their 1976 Federal income tax return, petitioners reported a long-term capital gain from the sale of the farm of $ 63,100. They took a $ 31,550 long-term capital gain deduction pursuant to section 1202. They did not report any minimum tax liability. The Commissioner determined that the long-term capital gain deduction was an item of tax preference within the meaning of sections 56(a) and 57(a)(9)(A) and that as a result petitioners were liable for minimum tax. OPINION Issue 1. Equity of Minimum Tax Liability
Sections 56(a), (c), and 57(a)(9) provided during *188 the taxable year before us: SEC. 56. IMPOSITION OF TAX. (a) GENERAL RULE.--In addition to the other taxes imposed by this chapter, there is hereby imposed for each taxable year, with respect to the income of every person, a tax equal to 15 percent of the amount by which the sum of the items of tax preference exceeds the greater of-- (1) $ 10,000, or (2) the regular tax deduction for the taxable year (as determined under subsection (c)). (c) REGULAR TAX DEDUCTION DEFINED.--For purposes of this section, the term "regular tax deduction" means an amount equal to one-half of (or in the case of a corporation, an amount equal to) the taxes imposed by this chapter for the taxable year (computed without regard to this part and without regard to the taxes imposed by sections 72(m)(5)(B), 402(e), 408(f), 531, and 541), reduced by the sum of the credits allowable under-- (1) section 33 (relating to foreign tax credit), (2) section 37 (relating to credit for the elderly), (3) section 38 (relating to investment credit), (4) section 40 (relating to expenses of work incentive program), (5) section 41 (relating to contributions to candidates for public office), (6) section *189 42 (relating to general tax credit), (7) section 44 (relating to purchase of new principal residence), and (8) section 44A (relating to expenses for household and dependent care services necessary for gainful employment). SEC. 57. ITEMS OF TAX PREFERENCE. (a) IN GENERAL.--For purposes of this part, the items of tax preference are-- (9) CAPITAL GAINS.-- (A) INDIVIDUALS.--In the case of a taxpayer other than a corporation, an amount equal to one-half of the net capital gain for the taxable year. The patent, unambiguous language of these statutes imposed a minimum tax liability upon petitioners as a result of their 1976 net capital gain from the sale of the farm. Petitioners contend, however, that it is inequitable to hold them liable for the minimum tax because it was the allegedly arbitrary and capricious conduct of the Service in refusing to purchase the farm in installments that gave rise to the large capital gain in 1976 and hence to the minimum tax. At the outset, we note that traditional equitable considerations do not normally apply to the enforcement of the Federal income tax laws. Efficient administration of the Internal Revenue laws demands that the tax be *190 imposed as Congress provides even though its application in an individual case may in some sense be unfair. Schuster v. Commissioner, 312 F.2d 311, 317 (9th Cir. 1962). Moreover, petitioners point to no acts evidencing extreme bad faith such as misrepresentation, overreaching, or duress. The petitioners voluntarily agreed to sell their property even after they were informed that an installment sale was not feasible. They were under no compulsion to do so by court order or otherwise, and it is no surprise that they did. The Service, having on hand plenty of taxpayer-provided cash, was willing and able to offer petitioners substantially more for their marginally productive farmland than would one seeking an economic return on his or her investment. In view of this government-provided windfall, whatever equitable elements exist in the dispute before us certainly do not fall on petitioners' side. Issue 2. Intended Scope of Minimum Tax
Petitioners contend that they are not within the class of persons upon whom the minimum tax was intended to impact. The tax was directed, they argue, to "high income individuals who were not paying their fair share of income *191 taxes." Employing the maxim cessanterationelegis, cessatetipsalex, petitioners maintain that because they were neither high-income nor non-taxpaying individuals, the minimum tax should not "in all equity and good conscience" be applied to them. Suffice it to say that Congress has unambiguously subjected petitioners to the minimum tax and is the only forum appropriate for the consideration of these complaints. To except petitioners from the minimum tax would be a most flagrant judicial usurpation of the legislative function. We hold that petitioners were liable for the minimum tax for 1976 as computed by respondent. To reflect the foregoing, Decision will be entered for the respondent. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended.↩