OCEY D. LAMB and ANN M. LAMB, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Lamb v. Commissioner
Docket No. 39674-85.
United States Tax Court
T.C. Memo 1987-220; 1987 Tax Ct. Memo LEXIS 218; 53 T.C.M. (CCH) 704; T.C.M. (RIA) 87220; April 29, 1987. Michael H. Singer, for the petitioners. Kenneth A. Burns, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies and additions to tax as follows: Additions to Tax
Tax Year
Section
Section
Section
Ended
Deficiency
6651(a)(1) [1]
6653(a)(1)
6653(a)(2)
12-31-80
$13,420.13
$671.01
$716.46
12-31-81
16,327.39
3,756.85
864.27
50% of the
interest due
on $17,285.39
The issue for determination is whether petitioners' partial compliance with respondent's toke program for 1982 and 1983 bars their income tax liability for 1980 and 1981. *219 FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated in our findings by this reference. Petitioners resided in Las Vegas, Nevada, at the time their petition was filed. During 1980 and 1981, petitioner Ocey D. Lamb (petitioner) was employed as a baccarat dealer at Caesar's Palace Hotel and Casino in Las Vegas, Nevada. Petitioners filed Federal income tax returns for 1980 and 1981, reporting their wages shown on W-2's issued by their employers for each of those years. For 1980, petitioner reported $8,610 as tip income from his job as a baccarat dealer. In 1981, petitioner did not report any tip income from his job as a baccarat dealer. In 1981, the Nevada District of the Internal Revenue Service (IRS) initiated a toke compliance program designed to increase compliance by casino dealers in the reporting of their toke (tip) income. Participating dealers agreed to keep a daily record of their toke income, submit the daily record to the IRS on a monthly basis, and report monthly to their employers all toke income received. Each participating dealer was to begin complying with the program as soon as he signed up in 1981. The IRS agreed *220 that the toke income of dealers who fully complied would not be audited for years prior to 1982. Respondent's agents began the program by meeting with the dealers at each casino in late 1981 and early 1982. During these meetings the program was described and the dealers were invited to participate as a group or individually. Individual dealers who wanted to participate could do so by sending a letter to or calling the IRS. Petitioner heard about the toke compliance program during 1982. He called the IRS and spoke to a person administering the program for the IRS. On an amended return filed on or after April 14, 1984, petitioners reported their correct tip income for 1982. On their tax return for 1983, filed on or after April 14, 1984, petitioners reported their correct tip income for 1983. Petitioner did not report his tip income to his employer for 1982 and 1983. Because of his failure to report his tip income to his employer, petitioner's returns were selected for audit. Respondent determined that petitioner had tip income of $47,400 for 1980 and $49,500 for 1981, which amounts are not disputed by petitioners. OPINION Petitioner contends that respondent is estopped *221 from claiming that he is not entitled to the benefits of the toke compliance program, i.e., "amnesty" from taxes owed for 1980 and 1981, because respondent's agent did not advise him that part of that program was that he report tips monthly to his employer. He asserts that this case is "virtually identical" to the circumstances present in Tonkonogy v. United States,417 F.Supp. 78 (S.D.N.Y. 1976). In that case, the District Court held that the Government was estopped from declaring a default in payment against a taxpayer who, while critically ill, received a letter from the IRS apparently extending the time to make the payment. The District Court stated that "as to a taxpayer who relies upon * * * statements [of an IRS agent] to his detriment at a time of great personal trauma and concern, [the IRS] agent will be found to be acting within the apparent scope of his authority." 417 F.Supp. at 80. Petitioner argues that the omission by respondent's agent in this case to mention the requirement of monthly reporting to petitioner's employer is the equivalent of a representation on which petitioners could rely. We are totally unpersuaded by petitioners' *222 argument. By correctly reporting their income tax liability for 1982 and 1983, they did no more than they were otherwise required by law to do. [2] Petitioner's compliance with the law is hardly a detriment cognizable as a basis for equitable relief. He was also required by section 6053(a) to furnish a monthly report of his tips to his employer on or before the tenth day following each month. See section 31.6053-1(a), Employment Tax Regs.
Assuming, without deciding, that petitioner was misled by an agent's failure to advise him of all of the requirements of the toke compliance program, such an error is not binding on the Commissioner. Dixon v. United States,381 U.S. 68, 73 (1965); Automobile Club of Michigan v. Commissioner,353 U.S. 180, 183 (1957); Manocchio v. Commissioner,710 F.2d 1400, 1403 (9th Cir. 1983), affg. 78 T.C. 989 (1982). The prerequisites to estoppel include detrimental reliance. The doctrine applies only in limited situations where a party has a compelling equitable interest and would sustain an unwarrantable *223 loss and to hold otherwise would be "grossly unfair." See Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962). None of these circumstances are present in this case. Petitioners are claiming release from obligations that they admittedly owe because they erroneously failed to comply with the requirements of the law. We see no equity in their position. There is no basis for relieving them from the deficiencies and additions to tax determined by respondent. [3]
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. Their compliance for 1982 was only by amended return filed approximately a year late.↩
3. Other arguments were raised in the petition but abandoned at trial. They are equally without merit. Compare Fitoussi v. Commissioner,T.C. Memo. 1987-221, and Hills v. Commissioner,T.C. Memo. 1986-432; see also Catania v. Commissioner,T.C. Memo. 1986-437, and Lewis v. Commissioner,T.C. Memo. 1986-436↩.