RICHARD FITOUSSI and JULIE K. FITOUSSI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Fitoussi v. Commissioner
Docket No. 8222-86.
United States Tax Court
T.C. Memo 1987-221; 1987 Tax Ct. Memo LEXIS 217; 53 T.C.M. (CCH) 706; T.C.M. (RIA) 87221; April 29, 1987. Michael H. Singer, for the petitioners. Kenneth A. Burns, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined deficiencies and additions to tax as follows: Additions to Tax
Tax Year
Section
Section
Section
Ended
Deficiency
6653(a)(1) [1]
6653(a)(1)
6653(a)(2)
12-31-80
$17,769.00
$888.45
12-31-81
27,399.00
$1,369.95
50% of the
interest due
on $27,399.00
The issue for determination *218 is whether petitioners' partial compliance with respondent's toke program for 1982 and 1983 bars their income tax liability for 1980 and 1981. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulation is incorporated in our findings by this reference. Petitioners resided in Las Vegas, Nevada, at the time their petition was filed. During 1980 and 1981, petitioner Richard Fitoussi (Mr. Fitoussi) was employed as a twenty-one dealer at Caesar's Palace Hotel and Casino in Las Vegas, Nevada. Petitioner Julie K. Fitoussi (Mrs. Fitoussi) was employed as a twenty-one dealer at Caesar's Palace in 1980 and began dealing baccarat at Caesar's Palace in late 1981. Petitioners filed Federal income tax returns for 1980 and 1981, reporting their wages shown on W-2's issued by their employer for each of those years. On their 1980 tax return, petitioners reported $8,736 in tips. On their 1981 tax return, petitioners reported $15,544 in tips. In 1981, the Nevada District of the Internal Revenue Service (IRS) initiated a *219 toke compliance program designed to increase compliance by casino dealers in the reporting of their toke (tip) income. Participating dealers agreed to keep a daily record of their toke income, submit the daily record to the IRS on a monthly basis, and report monthly to their employers all toke income received. Each participating dealer was to begin complying with the program as soon as he signed up in 1981. The IRS agreed that the toke income of dealers who fully complied would not be audited for years prior to 1982. Respondent's agents began the program by meeting with the dealers at each casino in late 1981 and early 1982. During these meetings the program was described and the dealers were invited to participate as a group or individually. Individual dealers who wanted to participate could do so by sending a letter to or calling the IRS. When they visited their tax preparer with respect to preparation of their 1982 income tax return in April 1983, petitioners discussed tax shelters with their tax preparer. After that discussion, they ceased reporting their tip income to their employer. In December 1983, petitioners purchased a tax sheltered investment, which substantially *220 reduced the tax liability reported on their 1983 income tax return. As of the time of the notice of deficiency sent January 9, 1986, [2] respondent was challenging the tax credits claimed by petitioners with respect to the tax sheltered investment. During 1983, petitioners received $87,178 in tip income. Of this amount, $9,843 was reported to their employer and $77,335 was reported on Forms 4137 attached to their 1983 income tax return. Because they did not report their entire tip income to their employer during 1983, petitioners were audited for 1980 and 1981. Respondent determined that petitioners had tip income of $45,306 in 1980 and $63,540 in 1981. Petitioners do not dispute the amounts determined by respondent. OPINION Petitioners contend that they substantially complied with the IRS toke program and that the IRS should be held to its agreement not to audit them for years prior to 1982. They assert that their performance extended beyond the requirements of law, in that they filed daily calendars *221 with the IRS on a monthly basis; and they argue that their failure to continue reporting tips to their employer during 1983 should be disregarded because they did not have any tax liability for 1983. Respondent suggests that the toke compliance program did not constitute a binding contract. We need not decide whether the toke compliance program was an enforceable contract vis-a-vis a taxpayer who complied fully with its provisions. It is apparent that petitioners did not fulfill the obligations they undertook to secure the benefits of that program. Petitioners' tax liability for 1983 is not before us, and it is thus not determined whether or not their failure to report their tips monthly to their employer, as required by section 6053(a) and the toke compliance program, resulted in an underpayment of their taxes. In any event, they ceased reporting to their employer in April of 1983, months before they actually made the investment that purportedly eliminated their tax liability. Petitioners suggest that they were relying on the advice of their income tax preparer in ceasing to report their tokes to their employer. That suggestion is not supported by the evidence. Even if *222 it were, however, erroneous advice of their tax preparer is not a reason to excuse them from complying with their obligations under the law (to report fully their tips on their tax return and to their employer) or the requirements of the toke compliance program. The monthly reporting to the employer requirement of section 6053(a) activates withholding of taxes by the employer from the employee's regular wages. See section 3402(k). [3] Mrs. Fitoussi testified that after she was told about various available tax shelters in April 1983, she said "'Well, to get the money to invest in [a tax shelter] I'll just save my paychecks,' and that's what I did." Thus she unilaterally decided to disregard her known obligation in order to avoid withholding from her regular wages of income tax on her tips. This omission was deliberate and not an inadvertent failure to comply with the toke program. *223 A representative of the IRS testified to what seems obvious, to wit, that the toke program requirement of monthly reporting to the employer serves two purposes. First, the dual reporting to the IRS and to the employer on a monthly basis provides an independent verification of the taxpayer's earnings at the end of the year. Second, monthly reporting (and consequent withholding) results in dealers being treated the same as other wage earners, i.e., reporting on the "pay-as-you-go" system. The only requirement of the toke compliance program that exceeded statutory requirements was the monthly filing of daily calendars with the IRS, and petitioners concededly complied with that part of the program. We cannot find, however, that their compliance was substantial when they ignored an important part of the program and a mandate of the statute. Petitioners also claim that agents of the IRS acknowledged on prior occasions that other persons in petitioners' position would be in substantial compliance with the toke program. Our responsibility, however, is to apply the law to the facts of the case before us and to determine the tax liability of the parties before us. ; *224 . There is no reason in this case to examine the motives or policies of the IRS in making administrative decisions such as whom to audit. See ; ; . See also . Nor is there any basis for relieving petitioners from the deficiencies and additions to tax determined by respondent. [4]
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended and in effect during the years in issue.↩
2. The statutory notice of deficiency disallows a claimed carryback from 1983 to 1980 and 1981 of an investment tax credit. Petitioners have not challenged this adjustment.↩
3. Sec. 3402(k) provides in part as follows: (k) Tips. -- In the case of tips which constitute wages, subsection (a) [requirement of withholding] shall be applicable only to such tips as are included in a written statement furnished to the employer pursuant to section 6053(a), and only to the extent that the tax can be deducted and withheld by the employer, at or after the time such statement is so furnished and before the close of the calendar year in which such statement is furnished, from such wages of the employee (excluding tips, but including funds turned over by the employee to the employer for the purpose of such deduction and withholding) as are under the control of the employer * * *↩
4. Other arguments were raised in the petition but abandoned at trial. They are equally without merit. Compare , and ; see also , and .↩