ERNEST R. DIMARZO, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Dimarzo v. Commissioner
Docket No. 34038-86.
United States Tax Court
T.C. Memo 1987-485; 1987 Tax Ct. Memo LEXIS 481; 54 T.C.M. (CCH) 659; T.C.M. (RIA) 87485; September 24, 1987. Michael H. Singer, *482 for the petitioner. Kenneth A. Burns, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Respondent determined deficiencies in and additions to petitioner's Federal income tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(a) [1]
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1980
$ 14,227.00
$ 711.00
-
-
1981
15,309.00
-
$ 765.00
50 percent of the
interest due on
$ 15,309
This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts set forth in the stipulation, together with the attached exhibits, are incorporated herein by reference and form the basis for our findings. The issue for determination is whether petitioner is relieved from his 1980 and 1981 income tax liabilities because of the so-called toke compliance program initiated by the respondent. Ernest R. Dimarzo, petitioner, resided in Las Vegas, Nevada, at the time the petition in this case was filed. During the taxable years 1980 *483 and 1981 petitioner was employed as a baccarat dealer at Caesar's Palace Hotel and Casino. Petitioner filed individual Federal income tax returns for 1980 and 1981, reporting his wages as shown by W-2's issued by his employer for each of those years. On his 1980 return petitioner reported $ 9,000 in tip income. Petitioner reported tips in the amount of $ 8,575 on his 1981 return. In 1981, the Nevada District of the Internal Revenue Service initiated a toke compliance program designed to increase compliance by casino dealers in the reporting of their toke (tip) income. [2] Participating dealers agreed to keep a daily record of their toke income, submit the daily record to the Internal Revenue Service on a monthly basis, and report monthly to their employers all toke income received. [3] Each participating dealer was to begin complying with the program as soon as he signed up. The Internal Revenue Service agreed that the toke income of dealers who fully complied would not be audited for years prior to 1982. *484 Respondent's agents began the program by meeting with the dealers at each casino in late 1981 and early 1982. During these meetings the program was described and the dealers were invited to participate as a group or individually. Individual dealers who wanted to participate could do so by sending a letter to or calling respondent. During 1982 petitioner received approximately $ 44,400 in tip income. Of this amount $ 11,400 was reported to petitioner's employer and $ 29,600 was reported on Form 4137 ("Computation of Social Security Tax on Unreported Tip Income") attached to his 1982 individual income tax return. Petitioner underreported his tip income by $ 3,400 attributable to underreporting for January 1982. During 1983 petitioner worked for half the year and received $ 20,600 in tip income. Of this amount, $ 2,700 was reported to his employer and the remaining amount was reported on Form 4137 attached to his 1983 tax return. Because petitioner underreported his 1982 tip income and failed to accurately report his tip income to his employer during 1983, respondent determined that petitioner was not entitled to the benefits of the toke compliance program. Consequently, *485 petitioner was audited for the taxable years in issue. Respondent determined that petitioner had tip income in the amounts of $ 44,675 and $ 49,025 for taxable years 1980 and 1981, respectively. Petitioner does not dispute respondent's determination of additional tip income. Petitioner contends that he complied with the toke compliance program for casino dealers. Petitioner asserts that respondent is estopped from claiming that he is not entitled to the benefits of the toke compliance program, i.e., "amnesty" from taxes owed for 1980 and 1981, because respondent's agent allegedly advised him that compliance with the program only required that he report the total amount of his tips on the post-1981 Federal income tax returns. The thrust of petitioner's second argument is that respondent is estopped from auditing his returns because respondent did not audit the returns of other baccarat dealers who were similarly situated. Upon review of the record before us, we are not persuaded by petitioner's arguments. Petitioner stipulated that he did not report the full amount of the income from tips on his income tax return for 1982 and that during 1983 he failed to accurately report *486 his tip income on a monthly basis to his employer as required by section 6053. [4] Thus, petitioner forfeited his rights to the program's benefit. Assuming, without deciding, that petitioner was misled by an agent's failure to advise him of all of the requirements of the toke compliance program, such an error is not binding on the Commissioner. Dixon v. United States,381 U.S. 68, 73 (1965); Automobile Club of Michigan v. Commissioner,353 U.S. 180, 183 (1957); Manocchio v. Commissioner,710 F.2d 1400, 1403 (9th Cir. 1983), *487 affg. 78 T.C. 989 (1982). The prerequisites to estoppel include detrimental reliance. The doctrine applies only in limited situations where a party has a compelling equitable interest and would sustain an unwarrantable loss and to hold otherwise would be "grossly unfair." See Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962). None of these circumstances are present in this case. Petitioner is claiming release from obligations that he admittedly owes because he erroneously failed to comply with the requirements of the law. We see no equity in his position. With respect to petitioner's argument that he complied with the program to the same extent as some dealers who were not audited, we emphasize that we cannot go behind a notice of deficiency+ in order to examine the motives or policies of the Internal Revenue Service in making administrative decisions such as whom to audit, unless there is substantial evidence of unconstitutional conduct on respondent's part. See Proesel v. Commissioner,73 T.C. 600, 605 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973). *488 See also International Business Machines Corp. v. United States,343 F.2d 914, 919 (Ct. Cl. 1965). No such evidence appears in this record. Nor is there any basis for relieving petitioner from the deficiencies and additions to tax determined by respondent. [5]
Decision will be entered for the respondent.
Footnotes
1. All section references refer to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. ↩
2. The parties stipulated that the description of the toke compliance program as set forth in the transcript of Gerald R. Hills, et al. v. Commissioner, docket Nos. 20526-84, 20577-84 and 20578-84, and Richard Fitoussi and Julie K. Fitoussi v. Commissioner, docket No. 8222-86, would govern in the instant case. See Hills v. Commissioner,T.C. Memo. 1986-432, and Fitoussi v. Commissioner,T.C. Memo. 1987-221↩. 3. In the Fitoussi↩ case a representative of the Internal Revenue Service testified that the toke program requirement of monthly reporting to the employer serves two purposes. First, the dual reporting to the Internal Revenue Service and to the employer on a monthly basis provides an independent verification of the taxpayer's earnings at the end of the year. Second, monthly reporting (and consequent withholding) results in dealers being treated the same as other wage earners, i.e., reporting on the "pay-as-you-go" system. 4. Section 6053 provides in pertinent part as follows: (a) Reports by Employees -- Every employee who, in the course of his employment by an employer, receives in any calendar month tips which are wages (as defined in section 3121(a) or section 3401(a)) or which are compensation (as defined in section 3231(e)) shall report all such tips in one or more written statements furnished to his employer on or before the 10th day following such month. Such statements shall be furnished by the employee under such regulations, at such other times before such 10th day, and in such form and manner, as may be prescribed by the Secretary.
See 31.6053-1(a), Employment Tax Regs. ↩
5. We have denied relief to other similarly situated taxpayers. See Fitoussi v. Commissioner,T.C. Memo. 1987-221; Lamb v. Commissioner,T.C. Memo. 1987-220; Hills v. Commissioner,T.C. Memo. 1986-432↩.