GLYNN WALKER AND YOLANDA WALKER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Walker v. Commissioner
Docket No. 35090-86.
United States Tax Court
T.C. Memo 1987-484; 1987 Tax Ct. Memo LEXIS 480; 54 T.C.M. (CCH) 657; T.C.M. (RIA) 87484; September 24, 1987. Michael H. Singer, *481 for the petitioners. Kenneth A. Burns, for the respondent. WRIGHT
MEMORANDUM OPINION WRIGHT, Judge: Respondent determined deficiencies in and additions to petitioners' Federal income tax as follows: Addition to Tax
Year
Deficiency
Section 6653(a) [1]
1980
$ 18,431.54
$ 921.58
1981
13,903.10
695.16
The issue for determination is whether petitioners are relieved from their 1980 and 1981 income tax liabilities because of the so-called toke compliance program initiated by respondent. This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The facts set forth in the stipulation, together with attached exhibits, are incorporated herein by reference and form the basis for our findings. At the time they filed their petition in this case, petitioners resided in Las Vegas, Nevada. During the taxable years in issue Glynn Walker (petitioner-husband) was employed as a baccarat floorman at Caesar's Palace Hotel and Casino. Petitioners filed *482 joint Federal income tax returns for 1980 and 1981, reporting their wages as shown on W-2's issued by their employers for each of those years. On their 1980 income tax return petitioners reported $ 7,800 as tip income and, on their 1981 return, petitioners reported tip income in the amount of $ 11,870. In 1981, the Nevada District of the Internal Revenue Service initiated a toke compliance program designed to increase compliance by casino dealers in the reporting of their toke (tip) income. [2] Participating dealers agreed to keep a daily record of their toke income, submit the daily record to the Internal Revenue Service on a monthly basis, and report monthly to their employers all toke income received. [3] Each participating dealer was to begin complying with the program as soon as he signed up. The Internal Revenue Service agreed that the toke income of dealers who fully complied would not be audited for years prior to 1982. *483 Respondent's agents began the program by meeting with the dealers at each casino in late 1981 and early 1982. During these meetings the program was described and the dealers were invited to participate as a group or individually. Individual dealers who wanted to participate could do so by sending a letter to or calling respondent. During 1982 petitioners received approximately $ 48,200 in tip income. Of this amount, $ 12, 050 was reported to petitioner-husband's employer and $ 32,000 was reported on Form 4137 ("Computation of Social Security Tax on Unreported Tip Income") attached to the joint 1982 income tax return. Petitioners underreported tip income for 1982 in the amount of $ 4,150. Of this amount, $ 3,400 is attributable to underreporting for January 1982. Similarly, during 1983 petitioner-husband did not accurately report his tip income on a monthly basis to his employer. On December 18, 1983, however, shortly after being interviewed by an Internal Revenue Service tax auditor, petitioner-husband reported $ 23,600 in tip income to his employer. Because petitioner-husband did not accurately report the entire amount of tip income received during 1982 and did not *484 report the full amount of his tips to his employer during 1983, respondent determined that petitioner-husband did not meet the toke compliance guidelines. Consequently, petitioners were audited for the taxable years in issue. Respondent determined that petitioners had tip income of $ 49,400 in 1980 and $ 48,800 in 1981. Petitioners do not dispute respondent's determination of additional tip income. Petitioners contend that petitioner-husband complied with the toke compliance program for casino dealers. Petitioners assert that respondent is estopped from claiming that petitioner-husband is not entitled to the benefits of the toke compliance program, i.e., "amnesty" from taxes owed for 1980 and 1981, because respondent's agent allegedly advised him that compliance with the program only required that he report the total amount of his tips on the post-1981 Federal income tax returns. The thrust of petitioners' second argument is that respondent is estopped from auditing their returns because respondent did not audit the returns of other baccarat dealers who were similarly situated. Upon review of the record before us, we are not persuaded by petitioners' arguments. Petitioners *485 stipulated that they did not report the full amount of the income from tips on their joint return for 1982 and that during 1983 petitioner-husband failed to accurately report his tip income on a monthly basis to his employer as required by section 6053. [4] Thus, petitioners forfeited their rights to the program's benefit. Assuming, without deciding, that petitioner-husband was misled by an agent's failure to advise him of all of the requirements of the toke compliance program, such an error is not binding *486 on the Commissioner. Dixon v. United States,381 U.S. 68, 73 (1965); Automobile Club of Michigan v. Commissioner,353 U.S. 180, 183 (1957); Manocchio v. Commissioner,710 F.2d 1400, 1403 (9th Cir. 1983), affg. 78 T.C. 989 (1982). The prerequisites to estoppel include detrimental reliance. The doctrine applies only in limited situations where a party has a compelling equitable interest and would sustain an unwarrantable loss and to hold otherwise would be "grossly unfair." See Schuster v. Commissioner,312 F.2d 311, 317-318 (9th Cir. 1962). None of these circumstances are present in this case. Petitioners are claiming release from obligations that they admittedly owe because they erroneously failed to comply with the requirements of the law. We see no equity in their position. With respect to petitioners' argument that petitioner-husband complied with the program to the same extent as some dealers who were not audited, we emphasize that we cannot go behind a notice of deficiency in order to examine the motives or policies of the Internal Revenue Service in making administrative decisions such *487 as whom to audit, unless there is substantial evidence of unconstitutional conduct on respondent's part. See Proesel v. Commissioner,73 T.C. 600, 605 (1979); Greenberg's Express, Inc. v. Commissioner,62 T.C. 324, 327 (1974); Human Engineering Institute v. Commissioner,61 T.C. 61, 66 (1973). See also International Business Machines Corp. v. United States,343 F.2d 914, 919 (Ct. Cl. 1965). No such evidence appears in this record. Nor is there any basis for relieving petitioners from the deficiencies and additions to tax determined by respondent. [5]
Decision will be entered for the respondent.
Footnotes
1. All section references refer to the Internal Revenue Code of 1954, as amended and in effect for the taxable years in issue. ↩
2. The parties stipulated that the description of the toke compliance program as set forth in the transcript of Gerald R. Hills, et al. v. Commissioner, docket Nos. 20526-84, 20577-84 and 20578-84, and Richard Fitoussi and Julie K. Fitoussi v. Commissioner, docket No. 8222-86, would govern in the instant case. See Hills v. Commissioner,T.C. Memo. 1986-432, and Fitoussi v. Commissioner,T.C. Memo. 1987-221↩. 3. In the Fitoussi↩ case a representative of the Internal Revenue Service testified that the toke program requirement of monthly reporting to the employer serves two purposes. First, the dual reporting to the Internal Revenue Service and to the employer on a monthly basis provides an independent verification of the taxpayer's earnings at the end of the year. Second, monthly reporting (and consequent withholding) results in dealers being treated the same as other wage earners, i.e., reporting on the "pay-as-you-go" system. 4. Section 6053 provides in pertinent part as follows: (a) Reports by Employees -- Every employee who, in the course of his employment by an employer, receives in any calendar month tips which are wages (as defined in section 3121(a) or section 3401(a)) or which are compensation (as defined in section 3231(e)) shall report all such tips in one or more written statements furnished to his employer on or before the 10th day following such month. Such statements shall be furnished by the employee under such regulations, at such other times before such 10th day, and in such form and manner, as may be prescribed by the Secretary.
See 31.6053-1(a), Employment Tax Regs. ↩
5. We have denied relief to other similarly situated taxpayers. See Fitoussi v. Commissioner,T.C. Memo. 1987-221; Lamb v. Commissioner,T.C. Memo. 1987-220; Hills v. Commissioner,T.C. Memo. 1986-432↩.