JOHN MANOCCHIO, PETITIONER *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 5135–81.    Filed June 14, 1982.

*F. Richard Losey* and *Daniel J. Leer,* for the petitioner.
*Constance L. Couts,* for the respondent.

OPINION

DAWSON, *Judge*: Respondent determined a deficiency in petitioner's Federal income tax for the taxable year 1977 in the amount of $924. The only issue for decision is whether petitioner is entitled to deduct as educational expenses under section 162[1] certain payments for flight-training expenses for which he received nontaxable reimbursement from the Veterans' Administration.

This case was submitted fully stipulated pursuant to Rule 122, Tax Court Rules of Practice and Procedure. The stipulation of facts and attached exhibits are incorporated herein by reference. The pertinent facts are summarized below.

Petitioner resided in San Mateo, Calif., when he filed his petition in this case. He timely filed his 1977 Federal income tax return with the Internal Revenue Service Center in Fresno, Calif.

Petitioner is a veteran of the U.S. Air Force. During 1977, he was employed as an airline pilot with Hughes Air West. He attended flight-training classes approved by the Veterans' Administration (VA) at National Jet Industries in Santa Ana, Calif., from June 5, 1977, to June 9, 1977, and again from August 24, 1977, to August 25, 1977. The classes cost a total of

---

[1] All section references are to the Internal Revenue Code of 1954 as amended and in effect during the year in issue, unless otherwise indicated.

$4,162 and maintained and improved skills required in petitioner's trade or business.

As a veteran, petitioner was eligible for an educational assistance allowance from the VA pursuant to 38 U.S.C. sec. 1677 (1976), equal to 90 percent of the costs incurred. The VA required a certification of completed training each month signed by both a school official and the petitioner before it would release payment checks. Consequently, at the end of each month in which petitioner received qualified instruction, National Jet Industries mailed a certification of flight training to the VA showing the total amount billed to his account. The VA then mailed petitioner a check for 90 percent of the amount specified, which he then endorsed over to the flight school. He paid the remaining 10 percent by personal check.

During 1977, petitioner received $3,742.88 from the VA as a direct reimbursement of his flight-training expenses. On his 1977 Federal income tax return, he excluded the VA payments from income pursuant to 38 U.S.C. sec. 3101(a) (1976). He also claimed a deduction of $4,193 for educational expense, comprised of his flight-training tuition of $4,162 and $31 of other miscellaneous expenses.

Petitioner's 1977 return was prepared by Robert Kern Associates, Inc., and specifically by Robert Kern, an agent enrolled to practice before the Internal Revenue Service. In preparing the return, he relied upon case law authority and Internal Revenue Service publications and pronouncements available to him, including, but not limited to, Publication 17 ("Your Federal Income Tax").

In his notice of deficiency, respondent disallowed the flight-training deduction in full. He has since stipulated, however, that the portion in excess of the amount reimbursed by the VA is deductible.

The reimbursement in this case was authorized by 38 U.S.C. sec. 1677,[2] which permits eligible veterans to receive an

---

[2]Sec. 1677. FLIGHT TRAINING

(a) The Administrator may approve the pursuit by an eligible veteran of flight training where such training is generally accepted as necessary for the attainment of a recognized vocational objective in the field of aviation or where generally recognized as ancillary to the pursuit of a vocational endeavor other than aviation, subject to the following conditions:

(1) the eligible veteran must possess a valid private pilot's license and meet the medical requirements necessary for a commercial pilot's license; and

educational assistance allowance equal to 90 percent of the expenses incurred for approved flight-training courses which are related to the veteran's vocation. Such payments are tax-exempt under 38 U.S.C. sec. 3101(a),[3] which provides a blanket exclusion from taxation for all benefit payments made pursuant to any law administered by the VA.

It is respondent's position that the portion of the flight-training expenses reimbursed by the VA is allocable to a class of tax-exempt income and, therefore, nondeductible under section 265. Alternatively, he maintains that no deduction is allowable because petitioner did not suffer any economic detriment with respect to the reimbursed expenses. Petitioner counters with the following arguments: (1) Section 265 does not apply because the expenses are allocable to his taxable employment income rather than the nontaxable VA reimbursement; (2) he incurred an economic detriment when he paid for the flight-training course; and (3) respondent is estopped from denying the deduction.

## 1. Applicability of Section 265

We agree with respondent that section 265 bars the deduction of the reimbursed expenses. Section 265(1) provides:

SEC. 265. EXPENSES AND INTEREST RELATING TO TAX-EXEMPT INCOME.

No deduction shall be allowed for—

---

(2) the flight school courses must meet the Federal Aviation Administration standards and be approved both by that Agency and the appropriate State approving agency.

(b) Each eligible veteran who is pursuing a program of education consisting exclusively of flight training approved as meeting the requirements of subsection (a) hereof, shall be paid an educational assistance allowance to be computed at the rate of 90 per centum of the established charges for tuition and fees which similarly circumstanced non-veterans enrolled in the same flight course are required to pay. Such allowance shall be paid monthly upon receipt of a certification as required by section 1681(c) of this title. In each such case the eligible veteran's period of entitlement shall be charged with one month for each $270 which is paid to the veteran as an educational assistance allowance for such course.

38 U.S.C. sec. 1677 has been repealed by the Omnibus Budget Reconciliation Act of 1981, sec. 2003, Pub. L. 97–35, 95 Stat. 357, 782.

[3]Sec. 3101. NONASSIGNABILITY AND EXEMPT STATUS OF BENEFITS

(a) Payments of benefits due or to become due under any law administered by the Veterans' Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, either before or after receipt by the beneficiary. * * *

(1) EXPENSES.—Any amount otherwise allowable as a deduction which is allocable to one or more classes of income other than interest (whether or not any amount of income of that class or classes is received or accrued) wholly exempt from the taxes imposed by this subtitle, or any amount otherwise allowable under section 212 (relating to expenses for production of income) which is allocable to interest (whether or not any amount of such interest is received or accrued) wholly exempt from the taxes imposed by this subtitle.

Under this provision, an amount cannot be deducted if it is "allocable to" a class of tax-exempt income other than interest. According to section 1.265–1(b)(1), Income Tax Regs., a class of exempt income includes any class of income wholly excluded from gross income under any provision of subtitle A of the Code or under the provisions of any other law. Thus, the reimbursement received by petitioner clearly qualifies as a class of exempt income for purposes of section 265. The only issue, then, is whether the educational costs are allocable to the reimbursement.

Petitioner argues that the expenses are not allocable to the reimbursement, but rather to the income derived from his employment as a pilot. More specifically, his position is that section 265(1) was intended to apply only to expenses incurred in the *production* of exempt income, and should not be construed to apply to expenses which were merely paid *out of* exempt income. In support, he quotes from the committee reports accompanying section 24(a)(5) of the Revenue Act of 1934, ch. 277, 48 Stat. 680, 691 (the predecessor of sec. 265), which indicate that the purpose of the statute is to disallow deductions allocable "to the production" of exempt income.[4]

---

[4]The House report states:

"Section 24(a)5. Disallowance of deductions attributable to tax-exempt income: This paragraph has been added to the bill to eliminate as deductions from gross income expenses allocable to the production of income wholly exempt from the income tax. Under the present law interest on State securities, salaries received by State employees, and income from leases of State school lands are exempt from Federal income tax, but expenses incurred in the production of such income are allowed as deductions from gross income. [H. Rept. 704, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 554, 571.]"

The Senate report states:

SEC. 24(A)5. DISALLOWANCE OF DEDUCTIONS ATTRIBUTABLE TO TAX-EXEMPT INCOME.

"The House bill disallows amounts otherwise allowable as deductions which are allocable to one or more classes of tax-exempt income even though the income fails to materialize or is received in an amount less than the expenditures made or incurred. For instance, under the present law, salaries received by State employees, income from leases of State school lands,

Unquestionably, a principal target of the legislation was expenses incurred in connection with an ongoing trade or business or investment activity, the *conduct* of which generates exempt income. The committee reports give as examples expenses incurred in earning interest on State securities, salaries by State employees, and income from leases of State school property. Nevertheless, we do not infer from these examples that Congress intended to limit the application of the statute to such situations and preclude its application under the circumstances presented in this case. The words it selected to describe the necessary relationship between the expense and exempt income—"allocable to"—do not carry an inherently restrictive connotation. Certainly, if Congress had wanted to confine the reach of the statute to the standard situations referred to in the committee reports, it could have easily done so by using more precise definitional language. It did not take a narrow approach, however, and we think the language employed is broad enough, particularly when construed in light of the policy behind the statute, to embrace the reimbursement situation where, but for the expense, there would simply be no exempt income. The right to reimbursement for the flight-training expenses arises only when the VA receives a certification from the flight school, signed by both the veteran and a school official, of the actual training received by the veteran during the month and the cost of such training.[5] The training allowance is then computed at 90 percent of the certified cost. Thus, there is a fundamental

---

and the interest on State and some classes of Federal securities are exempt from the income tax. It is contended that under the existing law all expenses incurred in the production of such income are allowable as deductions. The House bill specifically disallows expenses of this character. While your committee is in general accord with the House provision, it is not believed that this disallowance should be made to apply to expenditures incurred in earning tax-exempt interest. To do so might seriously interfere with the sale of Federal and State securities, which would be unfortunate during the present emergency. Accordingly, your committee recommends that the disallowance be applied to all classes of tax-exempt income except interest. Thus, a bank or other financial institution will not be denied a deduction for expenses incurred in earning tax-exempt interest. [S. Rept. 558, 73d Cong., 2d Sess. (1934), 1939–1 C.B. (Part 2) 586, 606.]"

[5]The certification is required by 38 U.S.C. sec. 1681(c) (1976), which provides:

Sec. 1681. Educational Assistance Allowance

Flight Training

(c) No educational assistance allowance for any month shall be paid to an eligible veteran who is pursuing a program of education consisting exclusively of flight training until the Administrator shall have received a certification from the eligible veteran and the

nexus between the reimbursement income and the expense which, in our opinion, falls within the scope of any reasonable interpretation of the "allocable to" requirement.[6]

We agree with petitioner that if the income derived from his employment as a commercial pilot were tax-exempt, and his educational expenses were *not* reimbursed by the VA, the flight-training deduction would be allocable to such income for purposes of section 265(1). We do not agree, however, that the deduction is permanently locked into his employment income where the expenses are also subject to exempt reimbursement. In that situation, we think the proximate one-for-one relationship between the reimbursement and the deduction overrides the underlying relationship between the deduction and the employment income, leaving the deduction "directly allocable," as that term is used in section 1.265–1(c), Income Tax Regs., solely to the reimbursement and to no other class of income.

The view we take here not only comports with the language and purpose of the statute, but is also consistent with the scant judicial authority on this subject. In *Banks v. Commissioner*, 17 T.C. 1386, 1393 (1952), the taxpayer was a former serviceman who attended college and claimed a deduction of $509 for tuition, books, and other expenses which were paid by the VA directly to the institution pursuant to the Servicemen's Readjustment Act of 1944. This payment, like the reimbursement in the present case, was exempt from taxation and the taxpayer did not include it in income. Citing the predecessor of section 265(1), this Court held that no deduction was allowable since the "income * * * devoted to the expense" was not taxed.[7] Similarly, in *Christian v. United States*, 201 F. Supp.

institution as to actual flight training received by, and the cost thereof to, the veteran during that month.

[6]During the year in issue, the total amount of flight-training benefits payable to an eligible veteran was also subject to an overall limitation equal to $270 multiplied by the number of his accrued months of entitlement. See 38 U.S.C. secs. 1677(b) and 1661; see also 38 C.F.R. sec. 21.1045(a)(2) (1981). In this case, petitioner did not reach his limitation and received full reimbursement of 90 percent of his incurred costs. Even if the ceiling figure had come into play, however, we would still hold that his educational expense deduction is allocable to the amount received and therefore nondeductible to that extent.

[7]In our view, the fact that the payment was made directly to the college, rather than in the form of a reimbursement to the taxpayer, as is the case here, does not provide a meaningful basis for distinguishing the two cases.

155, 156 (E.D. La. 1962), the District Court relied on section 265(1) to disallow deductions for certain travel expenses associated with the taxpayer's education where the travel was financed in part by a private gift and a fellowship award, both of which were tax-exempt.[8]

In addition, we are satisfied that our decision does not frustrate the purpose of either the exemption provided by 38 U.S.C. sec. 3101(a) or the reimbursement program created by 38 U.S.C. sec. 1677. The tax exemption appears to have had its genesis in an amendment to the Bureau of War Risk Insurance Act (act) which, beginning in 1917, provided certain benefits for members of the Armed Forces. See Act of October 6, 1917, sec. 311, ch. 105, 40 Stat. 398, 408. This amendment exempted from all taxation certain death and disability benefits. In a later amendment, the exemption was extended to all compensation, insurance, and allotments and family support allowances payable under the act. See Act of June 25, 1918, sec. 2, ch. 104, 40 Stat. 609. The exemption was carried over as section 22 of the World War Veterans' Act, 1924, ch. 320, 43 Stat. 607, 613, which consolidated a number of different laws governing the veterans' benefits into a single statute. In 1935, section 22 was repealed and a new statute was enacted which provided a broad tax exemption for benefits payable "under any of the laws relating to veterans." See Act of August 12, 1935, sec. 3, ch. 510, 49 Stat. 607, 609. This provision is now codified, in substantially identical language, in 38 U.S.C. sec. 3101(a).

As one might expect, the committee reports accompanying these various pieces of legislation do not address the possibility of a double tax benefit arising under the circumstances which present themselves here. But we think it is important to recognize that the exemption covers a broad range of veterans' benefits, including disability payments, family support allowances, and insurance proceeds, as well as educational benefits such as the flight-training reimbursement program. Since most of these benefits are not intended to reimburse any

---

[8]It should be noted, however, that in *Christian*, the taxpayer conceded that the disallowed expenses were allocable to the gift and fellowship award, and, therefore, the District Court did not have to address the issue we face here. See *Christian v. United States, supra* at 156 n. 7.

specific expenses incurred by the veteran, it is unrealistic to assume that Congress even considered, let alone approved, the deduction of *specifically reimbursed* educational expenses while the reimbursement itself remains sheltered by the umbrella exemption provided in 38 U.S.C. sec. 3101(a).

Moreover, we do not view our decision in this case as having any effect on the exemption provided by 38 U.S.C. sec. 3101(a) with respect to flight-training benefits. Although it is true that petitioner is left in the identical situation, from the standpoint of tax consequences, as if he had received a *taxable* reimbursement, in which case section 265 would not bar his deduction, there will obviously be instances where the veteran's flight-training expenses will be nondeductible irrespective of section 265. For example, the expenses might not satisfy the conditions for deductibility imposed by section 1.162–5, Income Tax Regs., or, assuming they do, the veteran might not have sufficient itemized deductions to take advantage of the deduction. In either of these situations, he would realize additional taxable income in the absence of the exemption provision.

In short, there is nothing in the legislative history of the relevant veterans' provisions to suggest that Congress intended for a veteran to have both an exemption and a tax deduction where his reimbursed flight-training expenses otherwise qualify as deductible business-related education. On the other hand, the legislative purpose behind section 265 is abundantly clear: Congress sought to prevent taxpayers from reaping a double tax benefit by using expenses attributable to tax-exempt income to offset other sources of taxable income. This is precisely what petitioner is attempting to do here, and in our judgment, the application of section 265(1) to disallow the reimbursed portion of the flight-training expense deduction is both reasonable and equitable.

Finally, we note that our result, although not our approach, is consistent with the outcome in *Wolfers v. Commissioner*, 69 T.C. 975, 983–985 (1978), involving a parallel fact situation. There the taxpayer was a shareholder in a subchapter S corporation which was required to vacate its business premises in order to make room for the Federal Reserve Bank of Boston. The corporation's moving expenses were reimbursed by the bank pursuant to the Uniform Relocation Assistance and Real Property Acquisition Policies Act of 1970, Pub. L. 91–646, 84

Stat. 1894 (1971) (Relocation Act). The Relocation Act was intended to provide assistance to businesses displaced by Federal or federally assisted programs, and one of its provisions exempted any payments made thereunder from Federal income taxes. Thus, the corporation did not include the reimbursement in income. It did, however, claim a deduction for the moving expenses. In sustaining the Commissioner's disallowance of that deduction, this Court did not invoke section 265, but rather held that a taxpayer cannot deduct an expense when it has a fixed right to reimbursement at the time the expense is incurred. See also *Charles Baloian Co. v. Commissioner*, 68 T.C. 620, 624–629 (1977), affd. ___ F.2d ___ (9th Cir. 1982).

While we think the result in *Wolfers* and *Baloian* is sound, we prefer to rest our decision on section 265 because we believe it provides a more direct and appropriate rationale for disallowing a deduction for flight-training expense which is subject in part to tax-free reimbursement.

## 2. *Applicability of Estoppel Doctrine*

Before discussing petitioner's estoppel argument, it is necessary to review the history of respondent's position concerning the deductibility of educational expenses incurred by veterans. In 1962, respondent issued Rev. Rul. 62–213, 1962–2 C.B. 59, which reads as follows:

Benefit payments under any law administered by the Veterans' Administration shall be exempt from taxation. See 38 U.S.C. 3101 (1958 Edition). Section 1.162–5 of the Income Tax Regulations provides, in part, that expenditures made by a taxpayer for his education are deductible under certain conditions.

*Held*, expenses for education, paid or incurred by veterans, which are properly deductible for Federal income tax purposes, are not required to be reduced by the nontaxable payments received during the taxable year from the Veterans' Administration.

In line with this position, the 1978 edition of Internal Revenue Service Publication 17, "Your Federal Income Tax," intended to aid individual taxpayers in preparing their 1977 returns, stated as follows with respect to educational expenses incurred by veterans:

*Veterans.* The deductible educational expenses of a veteran of the Armed

Forces are not required to be reduced by tax-exempt educational benefits received from the Veterans Administration.

At the time Rev. Rul. 62–213 was issued, there were several laws in existence which provided for vocational rehabilitation and educational and training assistance for veterans of the Korean War. In particular, 38 U.S.C. sec. 1631 (1958), authorized payment of an educational and training allowance to each eligible veteran enrolled in a qualifying program in order "to meet in part the expenses of his subsistence, tuition, fees, supplies, books, and equipment." This allowance generally took the form of level monthly payments, the amount of which varied according to (1) the veteran's degree of participation in the program (i.e., full-time, half-time, etc.), and (2) the number of dependents he was supporting. See, e.g., 38 U.S.C. sec. 1632(a) (1958). In addition, there was also a provision for a flight-training allowance, similar to that authorized in 38 U.S.C. sec. 1677 (see note 2 *supra*), which was computed solely as a percentage of the actual cost of the course, without regard to other factors such as the veteran's dependents. See 38 U.S.C. sec. 1632(g) (1958).

Several years after Rev. Rul. 62–213 was published, Congress extended these educational benefits to veterans of the post-Korean War era. In 1966, an educational assistance allowance modeled after the basic monthly benefit provided in 38 U.S.C. sec. 1631 (1958), was added by section 2 of the Veterans' Readjustment Benefits Act of 1966, Pub. L. 89–358, 80 Stat. 12, 17, and codified in 38 U.S.C. sec. 1681. Like its predecessor, the basic benefit was not determined by reference to the veteran's actual educational costs, but rather was a function of his enrollment status and the number of his dependents. See 38 U.S.C. sec. 1682(a) (1976). In 1967, a new flight-training program was added by section 302(b) of the Veterans' Pension and Readjustment Assistance Act of 1967, Pub. L. 90–77, 81 Stat. 178, 185, and codified in 38 U.S.C. sec. 1677.

Thirteen years later, respondent issued Rev. Rul. 80–173, 1980–2 C.B. 60, which purported to "distinguish and clarify" Rev. Rul. 62–213 as it pertained to the educational benefits provided in 38 U.S.C. secs. 1677 and 1681. It announced that flight-training expenses for which the veteran is reimbursed under 38 U.S.C. sec. 1677 are not deductible because "the

taxpayer suffers no economic detriment and incurs no expense in making the expenditure to the extent of the reimbursement." The ruling specifically limited its scope to payments made pursuant to 38 U.S.C. sec. 1677, as follows:

This holding applies only to reimbursement payments made under 38 U.S.C. section 1677. For treatment of subsistence and educational allowance payments made under 38 U.S.C. section 1681 (1976), which are not reimbursement payments determined by reference to amounts actually expended for tuition and fees, but rather are in the nature of a living stipend determined without regard to amounts expended, see Rev. Rul. 62–213, 1962–2 C.B. 59.

Since Rev. Rul. 80–173 does not state that it is to be applied prospectively only, it is automatically deemed by the Commissioner to have retroactive effect. See Rev. Proc. 78–24, 1978–2 C.B. 503; sec. 7805(b).[9] Hence, it formed the basis for the notice of deficiency sent to petitioner.

In his excellent and comprehensive briefs, petitioner argues that respondent's retroactive application of Rev. Rul. 80–173 in his case constitutes an abuse of discretion which warrants the remedy of estoppel. His arguments in support are essentially two-fold: (1) He reasonably relied on the position set forth in Rev. Rul. 62–213 to his detriment, and (2) respondent has drawn an arbitrary distinction between two groups of similarly situated taxpayers, i.e., those receiving benefits under 38 U.S.C. sec. 1677, and those receiving benefits under 38 U.S.C. sec. 1681. After carefully considering petitioner's arguments, we are satisfied that the facts before us do not fall within the narrow range of circumstances which would justify labeling respondent's action an abuse of discretion.

We begin by noting that the doctrine of estoppel is to be applied against the Commissioner "with utmost caution and restraint." *Schuster v. Commissioner*, 312 F.2d 311, 317 (9th Cir. 1962), affg. 32 T.C. 998 (1959) and revg. 32 T.C. 1017 (1959); *Estate of Emerson v. Commissioner*, 67 T.C. 612, 617 (1977). The Commissioner has the discretion under section 7805(b) to determine the extent to which regulations and revenue rulings

---

[9] SEC. 7805. RULES AND REGULATIONS.

(b) RETROACTIVITY OF REGULATIONS OR RULINGS.—The Secretary may prescribe the extent, if any, to which any ruling or regulation, relating to the internal revenue laws, shall be applied without retroactive effect.

will be applied retroactively, and ordinarily he will not be estopped from retroactively correcting a mistake of law. *Automobile Club of Michigan v. Commissioner*, 353 U.S. 180, 183 (1957); *Martin's Auto Trimming, Inc. v. Riddell*, 283 F.2d 503, 506 (9th Cir. 1960) ("It is a general rule that the United States does not lose its revenue because of the erroneous ruling of an administrative official"). Furthermore, his freedom to do so will not necessarily be restricted merely because a taxpayer has relied to his detriment on the erroneous position. *Dixon v. United States*, 381 U.S. 68, 73 (1965). Although it is settled law that the Commissioner's action is reviewable for an abuse of discretion (see *Automobile Club of Michigan v. Commissioner, supra* at 184), his discretion generally will be upheld unless there is evidence of unconscionable injury or undue hardship suffered by the taxpayer through reliance on the erroneous position (see, e.g., *Schuster v. Commissioner, supra; Lesavoy Foundation v. Commissioner*, 238 F.2d 589 (3d Cir. 1956)); or the circumstances reveal an unfair disparity in the Commissioner's treatment of similarly situated taxpayers (see, e.g., *Farmers' & Merchants' Bank v. United States*, 476 F.2d 406 (4th Cir. 1973); *International Business Machines Corp. v. United States*, 170 Ct. Cl. 357, 343 F.2d 914 (1965)); or other unusual circumstances are present. As the Ninth Circuit observed in *Schuster*, however, "such situations must necessarily be rare, for the policy in favor of an efficient collection of the public revenue outweighs the policy of the estoppel doctrine in its usual and customary context." 312 F.2d at 317.

We are willing to accept, for purposes of this case, that petitioner did in fact rely on the position in Rev. Rul. 62–213 and Publication 17 in claiming the disputed deduction, although the stipulation of facts is somewhat vague on this point. We also would be hard pressed to deny the reasonableness of his reliance, particularly since those administrative pronouncements were couched in broad terms and did not distinguish between the various types of educational benefits

afforded veterans, including the benefits payable under the then-existing flight-training program.[10] Nevertheless, while the facts of this case may evoke some sympathy for petitioner and other taxpayers who find themselves similarly situated, the law is settled that, absent highly unusual circumstances, respondent has very broad discretion to correct a mistake of law in a ruling and to do so with retroactive effect. Here petitioner can point to no extraordinary injury suffered as a result of his reliance. He can hardly be heard to complain, for example, that he would not have taken the flight-training course had he known the deduction was not available, because (1) the VA provided tax-free reimbursement for 90 percent of the costs, (2) his out-of-pocket cost on the remaining 10 percent was partially offset by the tax benefit attributable to the deduction of such costs, and (3) the education maintained and improved skills required in his trade or business. Nor is it a sufficient injury that petitioner must now disgorge the windfall tax benefit he received and compensate the Government for the use of its money during the intervening period. To hold otherwise would effectively strip respondent of the authority vested in him by section 7805(b).

We also find no merit in petitioner's argument that respondent has unfairly discriminated against taxpayers receiving payments under 38 U.S.C. sec. 1677 by permitting those receiving educational assistance allowances under 38 U.S.C. sec. 1681 to deduct their business educational costs without reduction for such amounts. In modifying Rev. Rul. 62–213, Rev. Rul. 80–173 states that benefits payable under 38 U.S.C. sec. 1681 which are in the nature of a "living stipend" determined without regard to the veteran's actual educational costs will continue to fall under the old rule, and will not reduce his educational expense deduction. The new position enunciated in Rev. Rul. 80–173 applies only to benefits provided under the flight-training program which are determined solely by reference to the actual cost of the training. Given the fundamental differences in the way these benefits are computed, we cannot say that respondent's decision to

---

[10] It would appear, under the circumstances, that in describing the effect of Rev. Rul. 80–173 on Rev. Rul. 62–213, the use of the word "modified" would have been more accurate than the use of the words "distinguished and clarified."

treat them differently for tax purposes is "so devoid of rational basis" as to constitute an abuse of discretion. See *Dixon v. United States, supra* at 79.

Accordingly, we conclude that respondent is not estopped from disallowing the deduction for the reimbursed flight-training expenses.

To give effect to our conclusions and the concession made by respondent,

*Decision will be entered under Rule 155.*

Reviewed by the Court.

FAY, *J.*, concurring: I agree petitioner's claimed deduction is disallowed by section 265(1). However, I disagree with any implication that we are deciding section 265(1) applies to expenses paid out of exempt income as well as to expenses incurred in the production of exempt income.

In a reimbursement situation such as the one presented herein, the expense may be said to have produced the exempt income simply because, if the expense had not been incurred, there would not have been any exempt income. Thus, this case falls precisely within section 265(1)'s disallowance of expenses paid to produce exempt income. Given the legislative history's indication that the principal target of section 265(1) is expenses incurred in the production of exempt income, I find no reason to consider any possible reach of section 265(1) beyond that clear target. I express no opinion as to whether section 265(1) is to be interpreted to disallow deductions merely because the expenses are paid out of exempt income. That issue is not before us.

CHABOT, *J.*, agrees with this concurring opinion.

WHITAKER, *J.*, concurring: While I agree with the Court that section 265(1) is dispositive of petitioner's contentions, our cases of *Wolfers v. Commissioner*, 69 T.C. 975 (1978), and *Charles Baloian Co. v. Commissioner*, 68 T.C. 620 (1977), affd. per order ___ F.2d ___ (9th Cir. 1982), are equally dispositive of

the claimed deduction. I further agree that the doctrine of equitable estoppel is not applicable here, but I disagree with the majority in characterizing as reasonable petitioner's reliance on Rev. Rul. 62–213, 1962–2 C.B. 59, and Internal Revenue Service Publication 17.[1]

The publication by this Court of its decision in *Charles Baloian Co. v. Commissioner, supra,* makes reliance by petitioner unreasonable and not only justifies but requires the retroactive application of Rev. Rul. 80–173. In *Baloian,* we recognized that a taxpayer is not entitled to a deduction otherwise allowable to the extent that he has a fixed right to reimbursement of the otherwise deductible expenses. This decision was filed many months before the petitioner filed his income tax return for 1977. Respondent, in Rev. Rul. 78–388, 1978–2 C.B. 110, also stated his position on reimbursed moving expenses, relying in part on this aspect of our *Baloian* decision. In fact, this state of the law was presaged as far back as our decision in *Cochrane v. Commissioner,* 23 B.T.A. 202 (1931). See also *Burnett v. Commissioner,* 356 F.2d 755 (5th Cir. 1966), cert. denied 385 U.S. 832 (1966). Under these circumstances, the delay in correcting the position stated in Rev. Rul. 62–213 cannot be used by petitioner as a basis for estoppel. Petitioner was adequately on notice that Rev. Rul. 62–213 in this respect was an incorrect statement of the law. Petitioner's reliance on the 1962 Revenue Ruling and on Publication 17, if in fact there was reliance, was misplaced and clearly unreasonable.

KÖRNER, *J.,* agrees with this concurring opinion.

---

[1] As the majority points out, there is at least some doubt whether or not petitioner did rely on these statements of respondent's position.

