STEPHEN G. PETRUCCI and A. NANNETTE PETRUCCI, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Petrucci v. Commissioner
Docket No. 10049-81.
United States Tax Court
T.C. Memo 1984-51; 1984 Tax Ct. Memo LEXIS 620; 47 T.C.M. (CCH) 1003; T.C.M. (RIA) 84051; January 31, 1984. Stephen G. Petrucci, pro se. James Gehres, for the respondent. COHEN
MEMORANDUM OPINION COHEN, Judge: Respondent determined a deficiency of $2,000 in petitioners' Federal income taxes for the year ended December 31, 1977, resulting from respondent's determination that petitioners were required *622 to recapture a credit claimed in 1975 under section 44. [1]
All of the facts have been stipulated, and the stipulation of facts is incorporated herein by this reference. Petitioners resided within the State of Colorado at the time the petition was filed. On July 18, 1975, petitioners purchased a new principal residence located in Burnsville, Minnesota (the Minnesota residence), at a cost of $50,097. On their 1975 income tax return, petitioners claimed and were allowed under section 44 a $2,000 tax credit attributable to the purchase of the Minnesota residence. In January 1976, Mr. Petrucci's employer relocated petitioners to Kalamazoo, Michigan. On February 4, 1976, petitioners purchased a replacement principal residence located in Kalamazoo (the Michigan residence) for $41,398. The Michigan residence had been previously occupied. On April 1, 1976, petitioners sold the Minnesota residence for $51,900. Section 44 provided a credit against tax, up to a maximum of $2,000, for the purchase of a new principal residence *623 between March 12, 1975, and January 1, 1977. Respondent does not deny petitioners' qualifications for the credit claimed by them in 1975. The dispute between the parties is over the correct application of the following portions of section 44: (c) Definitions.--For purposes of this section-- (1) New principal residence.--The term "new principal residence" means a principal residence (within the meaning of section 1034), the original use of which commences with the taxpayer * * *. * * * (d) Recapture for Certain Dispositions.-- (1) In General.--Except as provided in paragraphs (2) and (3), if the taxpayer disposes of property with respect to the purchase of which a credit was allowed under subsection (a) at any time within 36 months after the date on which he acquired it (or, in the case of construction by the taxpayer, on the day on which he first occupied it) as his principal residence, then the tax imposed under this chapter for the taxable year in which terminates the replacement period under paragraph (2) with respect to the disposition is increased by an amount equal to the amount allowed as a credit for the purchase of such property. (2) Acquisition of new residence. *624 --If, in connection with a disposition described in paragraph (1) and within the applicable period prescribed in section 1034, the taxpayer purchases or constructs a new principal residence, then the provisions of paragraph (1) shall not apply and the tax imposed by this chapter for the taxable year following the taxable year during which disposition occurs is increased by an amount which bears the same ratio to the amount allowed as a credit for the purchase of the old residence as (A) the adjusted sales price of the old residence (within the meaning of section 1034), reduced (but not below zero) by the taxpayer's cost of purchasing the new residence (within the meaning of such section) bears to (B) the adjusted sales price of the old residence. (3) Death of owner; casualty loss; involuntary conversion; etc.-- The provisions of paragraph (1) do not apply to-- (A) a disposition of a residence made on account of the death of any individual having a legal or equitable interest therein occurring during the 36 month period to which reference is made under such paragraph, (B) a disposition of the old residence if it is substantially or completely destroyed by a casualty described in *625 section 165(c)(3) or compulsorily and involuntarily converted (within the meaning of section 1033(a)), or (C) a disposition pursuant to a settlement in a divorce or legal separation proceeding where the other spouse retains the residence as principal residence. Petitioners contend that they are not required to recapture the credit taken in 1975 because (1) section 44 does not require that the replacement residence purchased by them be previously unoccupied, and (2) the sale pursuant to the transfer of Mr. Petrucci by his employer should be treated the same as an "involuntary conversion" under section 44(d)(3)(B). Petitioners' brief is primarily devoted to their interpretation of Congress's purposes in enacting section 44 and their assessment of the circumstances under which the statute was enacted. Much of their argument is based upon speculation and is unsupported by the record. This Court has previously reviewed the legislative history and summarized it as follows: The housing credit provision of the Tax Reduction Act [of 1975] was controversial from its inception. Senator Long sought to quell the unrest at the beginning of the Senate floor debates by indicating to *626 his colleagues that he would recommend that the bill be amended to provide the tax credit only for the purchase of new homes thus reducing the anticipated cost of the measure from $3 billion to $1 billion. 121 Cong. Rec. S4223 (daily ed. Mar. 18, 1975). This change was subsequently made (121 Cong. Rec., supra at S4483-S4490), and the amended version was passed by the Senate. Senator Long explained that this proposal would help "move out and sell those 400,000 houses that are in inventory." 121 Cong. Rec. S4791 (daily ed. Mar. 22, 1975). In conference, the housing credit was limited even further--to the purchase of residences "the construction of which began before March 26, 1975." In other words, the measure was narrowly aimed at the existing inventory of new but unsold homes. Congressman Ullman, speaking before the House of Representatives, stated that the Senate version of the tax credit was an inefficient and wasteful means of stimulating home building (121 Cong. Rec. H2382 (daily ed. Mar. 26, 1975)), but, he noted, the conference measure would facilitate a quick liquidation of the existing inventory of homes, a necessary predicate to revitalizing the home building industry. *627 121 Cong. Rec., supra at H2382, H2383, H2398. There was extended discussion of the Conference report on the House floor, 121 Cong. Rec., supra at H2382-H2384, H2386-H2389, H2397-H2400, and the bill as recommended by the Conference Committee passed both the House and Senate. Thus, what began as a broad-sweeping and perhaps inefficient remedial measure became, through the course of the legislative process, a precise response to a specific problem. Congress focused section 44 on the bulging inventory of already built, unsold homes as an attack on the doldrums in the housing industry. Section 44 was designed to stimulate and accelerate the sale of these homes. [Dobin v. Commissioner,73 T.C. 1121, 1125-1126 (1980).] Nothing in the legislative history suggests that section 44(d) should not be applied to this case on the basis of the specific language of that section. The language is consistent with the expressed purposes of Congress and with the agreed upon limitations of the credit. The requirement that the replacement residence purchased by petitioners be a principal residence, "the original use of which commences with the taxpayer," is the unavoidable *628 consequence of applying the definition set forth in section 44(c)(1) "[f]or purposes of" section 44. Petitioners argue that it is illogical to interpret the word "new" in section 44(d)(2) to include only those residences that would originally qualify for the section 44 credit because of the time periods applicable to qualifying residences, i.e., construction beginning prior to March 26, 1975; acquisition and occupancy after March 12, 1975, and before January 1, 1977; and acquired under a contract entered into before January 1, 1976. Section 44(e). The statutory language is unambiguous, however, and we are bound by it. Moreover, that language is not inconsistent with the statutory history set forth in Dobin v. Commissioner,supra, because it limits the incentives under section 44 to persons acquiring newly constructed housing that was not previously occupied as a residence, and it further limits the initial credit to taxpayers who purchased housing constructed and acquired during a particular time period. The literal meaning of the statute has been consistently applied by this Court. See Fenton v. Commissioner,T.C. Memo. 1983-410; Babnew v. Commissioner,T.C. Memo. 1983-213; *629 Nankivil v. Commissioner,T.C. Memo. 1982-722; Lonergan v. Commissioner,T.C. Memo. 1982-346. Petitioners also argue that the use of the term "etc." in the heading of section 44(d)(3), which provides for exceptions to the recapture requirement, should be interpreted to include among the exceptions transfers caused by employers as well as transfers resulting from death, involuntary conversion (within the meaning of section 1033(a)), or disposition pursuant to settlements in domestic cases. The heading is obviously an abbreviated reference to the specific terms of the statute, however, and these exceptions cannot be expanded beyond the circumstances specifically listed by Congress. Transfer of employment is not of those circumstances. [2] Compare section 1033(a), which defines involuntary conversion as resulting from destruction, theft, seizure, acquisition or condemnation of property. Finally, petitioners argue, without evidentiary support in the record, that they relied on the advice of respondent's agents *630 and publications in concluding that the replacement residence did not have to be "new" in the sense of being "unused" in order to avoid recapture of the credit taken in 1975. They claim that such alleged advice is evidence of congressional intent. Neither respondent nor this Court is bound by misleading interpretations of statutes, assuming for purposes herein that they were misleading, whether or not relied upon by taxpayers. See Dixon v. United States,381 U.S. 68, 72-73 (1965); Automobile Club of Michigan v. Commissioner,353 U.S. 180, 183 (1957); Manocchio v. Commissioner,78 T.C. 989, 998-1001 (1982), affd. 710 F.2d 1400 (9th Cir. 1983); Zuanich v. Commissioner,77 T.C. 428, 432-433 (1981), on appeal (9th Cir., Nov. 13, 1981). [3]
Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year here in issue.↩
2. See Fenton v. Commissioner,T.C. Memo. 1983-410; Babnew v. Commissioner,T.C. Memo. 1983-213↩.
3. See also Fenton v. Commissioner,supra;Nankivil v. Commissioner,T.C. Memo. 1982-722↩.