**Noel D. INDUNI and Janet E. Induni, Petitioners–Appellants,**

**v.**

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.**

**No. 1018, Docket 92–4177.**

United States Court of Appeals, Second Circuit.

Submitted Feb. 26, 1993.

Decided April 1, 1993.

Jon R. Eggleston, Burlington, VT (Peter F. Young, Miller, Eggleston & Rosenberg Ltd., Burlington, VT), for petitioners-appellants.

James A. Bruton, Acting Asst. Atty. Gen., Washington, DC (Gary R. Allen, Bruce R. Ellisen, Annette M. Wietecha, U.S. Dept. of Justice Tax Div., Washington, DC), for respondent-appellee.

Before: McLAUGHLIN, JACOBS, Circuit Judges, and SPATT, District Judge.[*]

JACOBS, Circuit Judge:

Appellants Noel D. and Janet E. Induni are taxpayers who deducted mortgage interest and real estate tax expenses on their income tax returns for 1986–1988. In those years, Mr. Induni collected a tax-exempt Living Quarters Allowance ("LQA") as a federal employee stationed abroad. The Internal Revenue Service ("IRS") disallowed the Indunis' deductions on the ground that, under Section 265(a)(1) of the Internal Revenue Code ("IRC"), 26 U.S.C. § 265(a)(1) (1988), expenses that are "allocable" to tax-exempt income are not deductible. A special trial judge of the Tax Court upheld the position of the IRS. The Indunis appeal from a decision of the Tax Court (Dawson, J.) that adopts the decision of the special trial judge. On appeal the Indunis argue (1) that the IRS had a long-standing practice of permitting recipients of tax-exempt housing stipends to deduct mortgage interest and real estate taxes and that a 1986 amendment to Section 265 reflects congressional intent to ratify that practice and (2) that their mortgage interest and real estate taxes were in any event not "allocable" to the LQA within the meaning of Section 265. We affirm the decision of the Tax Court.

## FACTS

Appellant Noel Induni has been an employee of the United States Immigration and Naturalization Service for 19 years. Between 1984 and 1988, Mr. Induni was Area Director of the INS's pre-clearance station at Dorval International Airport in Montreal. While stationed in Montreal, Mr. Induni received an LQA in accordance with 5 U.S.C. § 5923(2) (1988). An LQA is a stipend that is provided to qualifying federal employees stationed abroad who are not otherwise provided with housing. LQAs are exempted from federal income

tax by Section 912(1)(C) of the IRC. 26 U.S.C. § 912(1)(C) (1988).

The amount of an employee's LQA is calculated by reference to Standardized Regulations adopted by the State Department ("Standardized Regulations"), and depends upon a number of variables, including whether the employee owns a home or rents one. The Indunis purchased a house in Montreal and lived in it during the tax years at issue in this case. Under the Standardized Regulations, the LQA of a homeowner includes a "rent" component equal to 10 percent of the purchase price of the house, prorated per annum, on which basis Mr. Induni received an LQA of $9,389.10 in 1986, $9,481.50 in 1987, and $1,881.60 in 1988.

For those three years, the Indunis relied upon Sections 163(a) and 164 of the I.R.C., 26 U.S.C. §§ 163(a), 164 (1988), to deduct the following amounts for mortgage interest and local real estate taxes on their house:

|      | Mortgage Interest | Real Estate Tax |
|------|-------------------|-----------------|
| 1986 | $9,076.50         | $1,973.28       |
| 1987 | $8,663.57         | $2,204.74       |
| 1988 | $3,187.26         | $1,029.33       |

On or about February 5, 1990, the IRS served the Indunis with a notice of deficiency for 1986, 1987 and 1988 in the amounts of $3,458.00, $2,399.00 and $2,842.00, respectively, and assessed a fine of $142.10 for negligence in connection with the 1988 tax year. The notice of deficiency gave the following explanation for the IRS's determination:

The deductions you claimed … for mortgage interest and real estate taxes have been adjusted to remove the portion which is allocable to the tax-exempt Living Quarters Allowance (LQA) that you received from the United States Government.

Section 265(1) of the Internal Revenue Code disallows deductions for expenses attributable to tax-exempt income. The disallowance of the portion of your mortgage interest and real estate taxes allocable to tax-exempt income has been

[*] The Honorable Arthur D. Spatt of the United States District Court for the Eastern District of New York sitting by designation.

done in accordance with the procedure outlined in Revenue Ruling 83–3.

The Indunis petitioned the Tax Court for relief from the Commissioner's determination. In a lengthy opinion, a special trial judge denied the Indunis' petition in every respect, and the Tax Court adopted the special trial judge's opinion. This appeal followed.

Essentially, the Indunis challenge the Tax Court's decision on two grounds. First, the Indunis claim that, notwithstanding Section 265, the IRS has had a long-standing practice of permitting recipients of tax-exempt housing stipends to deduct mortgage interest and real estate taxes, and that a 1986 amendment of Section 265 ratified that practice. Second, the Indunis argue that the expenses were not "allocable" to tax-exempt income within the meaning of IRC Section 265.

## ANALYSIS

■ When interpreting the meaning of the IRC, we must "look to the 'ordinary everyday senses' of the words." *C.I.R. v. Soliman*, — U.S. —, —, 113 S.Ct. 701, 705, 121 L.Ed.2d 634 (1993) (quoting *Malat v. Riddell*, 383 U.S. 569, 86 S.Ct. 1030, 16 L.Ed.2d 102 (1966)). "Faced with ... ambiguity, we are obliged to defer to the view taken by the [IRS] so long as it embodies a reasonable interpretation of the statutory language and legislative history." *Knapp v. C.I.R.*, 867 F.2d 749, 752 (2d Cir.1989).

*Section 265(a)(1) and Tax–Exempt Housing Allowances*

In disallowing the Indunis' deductions, the IRS relied upon the following language in Section 265(a)(1):

No deduction shall be allowed for ... [a]ny amount otherwise allowable as a deduction which is **allocable to one or more classes of income** other than interest (whether or not any amount of income of that class or classes is received or accrued) **wholly exempt from taxes**....

(Emphasis added.) The Tax Court concluded that "petitioners' mortgage interest and real property taxes are housing expenses intended to be covered by ... the LQA. As such, the deductions are indirectly allocable to a class of tax-exempt income." The Indunis contend that this holding was erroneous and that the IRS has long permitted recipients of tax-exempt housing allowances to deduct mortgage interest and real estate taxes. The Indunis find support for their argument in the history of the IRS's interpretation of Section 265 and in a 1986 amendment of that Section. We disagree: the history of the IRS rulings applying Section 265 and the language of the 1986 amendment and its legislative history clearly support the IRS's position that the Indunis' mortgage interest and real estate taxes were not appropriate deductions from their income for 1986–1988.

The principal application of Section 265(a)(1) is to bar the deduction of expenses incurred in the course of earning tax-exempt income. *See Church v. Commissioner*, 80 T.C. 1104, 1983 WL 13864 (1983) (disallowing deduction of legal fees incurred in obtaining a personal injury judgment); *Manocchio v. Commissioner*, 78 T.C. 989, 994, 1982 WL 11107 (1982) ("Unquestionably, a principal target of the legislation was expenses incurred in connection with an ongoing trade or business or investment activity, the *conduct* of which generates exempt income."), *aff'd on other grounds*, 710 F.2d 1400 (9th Cir.1983) (emphasis in original).

In a series of 1960's Revenue Rulings, the Commissioner considered situations (such as is presented on this appeal) in which the language of Section 265(a)(1) would bar an otherwise allowable deduction, even though the expenses in those situations were not incurred in the course of earning tax-exempt income. In Revenue Ruling 62–212, 1962–2 C.B. 41, the IRS decided that:

The amounts of interest and taxes paid by a minister of the gospel in connection with his personal residence are allowable as itemized deductions under the provisions of section 163 and 164 of the Internal Revenue Code, respectively, even though the minister is entitled to rental allowance exclusion under section 107 of the Code.

Similarly, in Revenue Ruling 62–213, 1962–2 C.B. 59, the IRS held that:

> expenses for education, paid or incurred by veterans, which are properly deductible for Federal income tax purposes, are not required to be reduced by the nontaxable payments received during the taxable year from the Veterans' Administration.

During the 1970's the IRS considered whether it should apply Section 265(a)(1) more expansively to "deny a deduction where the exempt income is earmarked for a specific purpose and otherwise deductible expenses are incurred in carrying out that purpose." Gen.Couns.Mem. 35596 (December 13, 1973). The IRS recognized that the more expansive approach would necessitate revocation of Revenue Rulings 62–212 and 62–213.

In the early 1980's the Tax Court adopted the more expansive view in ruling that a pilot could not deduct the cost of a flight training course because those costs were reimbursed by a tax-exempt veterans' grant: "[T]here is a fundamental nexus between the reimbursement income and the expense which, in our opinion, falls within the scope of any reasonable interpretation of the 'allocable to' requirement." *Manocchio, supra,* 78 T.C. at 994–95. The Tax Court explicitly rejected the taxpayer's argument that Section 265(a)(1) operates only when the expenses are incurred to generate tax-exempt income.

In 1983 the IRS issued a ruling that considered the permissibility of three types of deductions: (1) educational expenses that were allocable to tax-exempt veterans' benefits; (2) interest and taxes paid on a personal residence that were allocable to a tax-exempt rental allowance; and (3) educational expenses that were allocable to a scholarship tax-exempt scholarship. Revenue Ruling 83–3, 1983–1 C.B. 72, announced that none of these expenses were deductible and expressly revoked Revenue Rulings 62–212 and 62–213. The IRS thereby expressly adopted a broader test for determining when a deduction is allocable to tax-exempt income under Section 265. Under Revenue Ruling 83–3, Section

265(a)(1) applies where "the taxpayer has incurred expenses for the purposes for which the tax-exempt income was received."

Insofar as it applied to the clergy, Revenue Ruling 83–3 never took effect. The IRS stated that the ruling would have prospective application only. In the Tax Reform Act of 1984, Pub.L. 98–369, Congress delayed the implementation of the portion of Revenue Ruling 83–3 that affected ministers until January 1, 1986. On July 2, 1985, the IRS issued Revenue Ruling 85–96, 1985–2 C.B. 87, which announced that the IRS would not apply Revenue Ruling 83–3 to ministers until January 1, 1987. Also on July 2, 1985, the IRS announced that it was considering applying the holding of Revenue Ruling 83–3 to recipients of tax-exempt military housing allowances as well.

In 1986, Congress amended Section 265(a) by adding the following subsection:

**(6) Section not to apply with respect to parsonage and military housing allowances**—No deduction shall be denied under this section for interest on a mortgage on, or real property taxes on, the home of the taxpayer by reason of the receipt of an amount as (A) a military housing allowance, or (B) a parsonage allowance. . . .

On this appeal, the Indunis argued that this amendment countermands the steps taken to widen the application of Section 265 and evidences congressional intent to allow the deduction of mortgage interest and real estate taxes for all recipients of tax-exempt housing allowances. The IRS argues in response that the 1986 amendment presupposes the widened application of Section 265 and creates narrow exceptions, inapplicable to the Indunis, for people in the military or the clergy.

We conclude that the Indunis' position is untenable. By specifying that "[n]o deduction shall be denied under this section" for mortgage interest and real estate tax expenses incurred by some—but not all—groups of taxpayers who enjoy tax-exempt housing allowances, the amendment implies

that all other tax-exempt housing allowances are within the ambit of Section 265.

The House Report on the amendment recognized that the statute operated to bar deductions generally where "the use of tax-exempt income is sufficiently related to the generation of a deduction to warrant disallowance of that deduction." H.R. Report No. 426, 99th Cong., 1st Sess. 135 (1985)(*citing Manocchio v. Commissioner,* 78 T.C. 989, 1982 WL 11107, *aff'd on other grounds,* 710 F.2d 1400 (9th Cir.1983)). The amendment therefore ratified the more expansive view of Section 265(a)(1) and created an exemption for only two taxpayer groups: recipients of parsonage and recipients of military housing allowances. We conclude therefore that the Indunis' deductions are of the kind subject to disallowance under Section 265(a)(1) and that the Indunis are not among those taxpayers exempted from disallowance of such deductions by Section 265(a)(6).

*Allocability of LQAs to Deductions*

The Indunis also argue that Mr. Induni's LQA was not properly "allocable" to their deductions for mortgage interest and real estate taxes. We therefore must determine whether the Indunis "incurred expenses for the purposes for which the tax-exempt income was received." *See* Revenue Ruling 83–3. Mr. Induni's LQA was authorized by 5 U.S.C. § 5923 (1988), which provides:

> When Government owned or rented quarters are not provided without charge for an employee in a foreign area, one or more of the following quarters allowances may be granted when applicable
>
> ...
>
>   *   *   *.   *   *   *
>
> (2) A *living quarters allowance* for *rent,* heat, light, fuel, gas, electricity, and water ...

(Emphasis added.) According to the Indunis, the tax-exempt income payable under this section is paid "for the purpose" of defraying "rent" and specified utility charges, not "for the purpose" of paying taxes and mortgage interest. As noted above, however, it is undisputed that Mr. Induni's LQA under that subsection was calculated as a percentage of the home's purchase price. The Indunis cannot therefore contend that the word "rent" in that subsection is unrelated to the costs associated with owning (as opposed to renting) a home.

The Standardized Regulations recognize that rent denotes the cost of housing, and is not limited to leasehold payments. Section 131.2 of the Standardized Regulations provides:

> "*Rent*", exclusive of heat, light fuel, ... water and taxes, *means the annual cost of suitable, adequate living quarters for an employee and his/her family.* When approved by the head of agency as necessary to provide such living quarters, rent may include in addition to the basic annual rental, the cost of: ... interest on a loan from an American institution to finance "key money" paid to a landlord.

(Emphasis added.) Section 131.3 of the Standardized Regulations states:

> The LQA rates are designed to cover substantially all of the average employee's costs for rent, heat, light, fuel, gas, electricity, water, *taxes levied by the local government and required by law or custom to be paid by the lessee....*

(Emphasis added.)

These regulations as well as the provision allowing purchasers of homes to collect 10 percent of the purchase price as the rent component of the LQA confirm that the purpose of the LQA is to provide recipients with the wherewithal to obtain housing while abroad. The costs of such housing are therefore "allocable" to the LQA.

## CONCLUSION

We have carefully examined all of the other arguments advanced by the Indunis and find them lacking in merit. Accordingly, the decision of the Tax Court is affirmed.